## STATE v. ORVILLE PEARSON.

(Filed 21 November 1962.)

**1. Criminal Law § 82;　Rape § 14—**

Whether the solicitor should be permitted to ask leading questions, particularly of a prosecutrix of tender years in a trial of a defendant charged with rape, carnal abuse, and other cases involving inquiry into delicate subjects of a sexual nature, rests in the sound discretion of the trial court, and since the trial court, from his observation of the witness and knowledge of the circumstances of the particular case, is in a better position to decide the course of conduct necessary to establish the truth and yet safeguard the rights of defendant, the exercise of his discretion will not be disturbed in absence of manifest abuse.

**2. Same—**

In this prosecution of a twenty-year old defendant for carnally knowing and abusing a fourteen-year old girl, it appeared that the prosecutrix remained silent when interrogated in regard to the more intimate details necessary to make out the State's case and that the solicitor was then permitted by the court to ask leading questions in regard thereto. *Held:* The record discloses no abuse of discretion by the trial court in permitting the leading questions, the *corpus delicti* being established by other evidence.

**3. Criminal Law § 90—**

Where evidence competent for the purpose of corroboration is admitted over the general objection of defendant without request that its admission be restricted, exception to the admission of the evidence cannot be sustained. Rule of Practice in the Supreme Court No. 21.

**4. Criminal Law § 154—**

An assignment of error must disclose within itself the question sought to be presented without the necessity of going through the record to find the asserted error or ascertain the precise question involved. Rules of Practice in the Supreme Court Nos. 19(3) and 21.

**5. Criminal Law § 159—**

An assignment of error in support of which no reason or argument is stated and no authority cited in the brief will be deemed abandoned. Rule of Practice in the Supreme Court No. 28.

APPEAL by defendant from *Shaw, J.,* March 1962 Term of ALEXANDER.

Criminal prosecution on an indictment charging defendant, Orville Pearson, a male person over eighteen years of age, on 24 May 1961 with feloniously and carnally knowing and abusing Rosina Clontz, a female child over twelve and under sixteen years of age, who had never before had sexual intercourse with any person: a violation of G.S. 14-26.

Plea: Not Guilty. Verdict: Guilty as charged in the indictment.

From a sentence of imprisonment for not less than three years nor more than five years, defendant appeals.

*Attorney General T. W. Bruton and Assistant Attorney General Harry W. McGalliard for the State.*
*Ray Jennings for defendant appellant.*

PARKER, J.   Rosina Clontz, a witness for the State, testified in substance as follows:

She is fourteen years old. On 24 May 1961 she got into an automobile with Orville Pearson, and went with him to the FCX store in Taylorsville, a short distance from where she lives. They got two Pepsi-Colas, and went from the FCX store down by a chicken house on "a teeny dirt road." There was nobody with her but Orville Pearson.

After Rosina had given this testimony the following appears in the record:

"(Witness first testified that when they left the store they went back home, and that she did not go with him anywhere else that day. The trial Judge at this point permitted the Solicitor to ask leading questions on account of the 'tender years' of the witness).

"The Solicitor asked her to tell what happend after they got to the chicken house and stopped. No answer was given. The Solicitor again asked her to go ahead and without him leading her to tell what happened. She said: 'Well, we were just sitting there talking — and he put his arms around me and kissed me.' The witness then stopped and the Court directed her to go ahead. The Solicitor then asked her the following question: 'Now, you told us about his stopping at the chicken house and you told us that he put his arms around you and kissed you. Did he put his hands on you?' To which the witness answered: 'Yes, Sir.' The Solicitor then asked: 'Did he take out his private parts?' Witness answered: 'Yes, Sir.' Solicitor asked: 'What did he do with them?' To which there was no answer. The Court instructed witness to answer his question. The Solicitor then asked witness if he put his private parts in hers, and the witness answered: 'Yes, Sir.' The Solicitor then asked what she did then, and she answered that she started crying. She testified that she did not know how long they were there; that after leaving they went down close to Edith Mitchell's and he let her out and went on. Upon being asked by the Solicitor if she had told her mother what happened, she said that she had. The Solicitor then asked her if she had ever had sexual intercourse with any person other than him, and she replied: 'No, Sir.'

"DEFENDANT'S EXCEPTION NO. 1."

Immediately thereafter in the record appears the testimony of Rosina on cross-examination, which is in substance:

She doesn't remember what time of the evening it was: it wasn't daylight. When she got home after dark her mother gave her a whipping, and then she told her mother that Orville had done something to her. She lives right close to where Orville lives. She has known him about two years, and she visits at his mother's home.

Defendant assigns as error "the action of the presiding judge in allowing the solicitor to ask leading questions of the prosecuting witness in regard to the alleged act of sexual intercourse with the defendant Orville Pearson."

Notwithstanding the general rule against asking one's own witness leading questions, the control of such is largely within the sound discretion of the trial judge. In this jurisdiction the law has been well settled for many years that it is within the sound discretion of the trial judge whether or not counsel shall be permitted to ask leading questions, and the exercise of such discretion, in the absence of an abuse thereof, will not be disturbed on appeal. *Bank v. Pinkers,* 83 N.C. 377; *Howell v. Solomon,* 167 N.C. 588, 83 S.E. 609; *S. v. Buck,* 191 N.C. 528, 132 S.E. 151; *In re Will of Williams,* 215 N.C. 259, 1 S.E. 2d 857; *S. v. Hargrove,* 216 N.C. 570, 5 S.E. 2d 852; *S. v. Harris,* 222 N.C. 157, 22 S.E. 2d 229; *S. v. Cranfield,* 238 N.C. 110, 76 S.E. 2d 353; Stansbury, North Carolina Evidence, Witnesses, sec. 31; 98 C.J.S., Witnesses, sec. 329.

Generally, leading questions are permissible to arrive at facts when modesty or delicacy prevents full answers to general interrogatories. Hence, because of the delicate nature of the subject of inquiry, many courts have recognized and held that rape and carnal abuse cases, and other cases involving inquiry into delicate subjects of a sexual nature, constitute an exception to the general rule against leading questions, and that in such cases the permitting of leading questions of the prosecutrix, particularly if she is of tender years, is a matter within the sound discretion of the trial judge. *S. v. Beatty,* 226 N.C. 765, 40 S.E. 2d 357; *Antelope v. United States,* 10th Cir., 185 F. 2d 174; *Buckley v. State,* 19 Ala. App. 508, 98 So. 362; *Parker v. State,* 26 Ala. App. 61, 152 So. 610; *State v. Upton,* 65 Ariz. 93, 174 P. 2d 622; *Reynolds v. State,* 220 Ark. 188, 246 S.W. 2d 724; *People v. Jackson,* 124 Cal. App. 2d 787, 269 P. 2d 17; *Wills v. People,* 100 Colo. 127, 66 P. 2d 329 (statutory rape—prosecutrix 17 years of age); *Warren v. People,* 121 Colo. 118, 213 P. 2d 381; *State v. Miller,* 71 Kan. 200, 80 P. 51; *Meredith v. Commonwealth,* 265 Ky. 380, 96 S.W. 2d 1049; *Summerville v. State,* 207 Miss. 54, 41 So. 2d 377 (statutory rape—prose-

cutrix 16 years of age); *State v. Coffman,* 360 Mo. 782, 230 S.W. 2d 761; *State v. Riley,* 28 N.J. 188, 145 A. 2d 601; *Flannery v. State,* 135 Tex. Cr. R. 235, 117 S.W. 2d 1111, Rehearing Denied 22 June 1938; *State v. Tenney,* 137 Wash. 47, 241 P. 669; *State v. Davis,* 20 Wash. 2d 443, 147 P. 2d 940; 98 C.J.S., Witnesses, sec. 331, (d), pp. 45-6. See also *Stinson v. State,* 125 Ark. 339, 189 S.W. 49, a prosecution for carnal abuse of a female under 16 years of age, in which the Court held that, in view of the natural reluctance of the prosecutrix to testify to specific acts, it was not an abuse of the trial court's discretion to ask leading questions tending to show what had taken place and the actual commission of the offense.

*S. v. Beatty, supra,* was a criminal prosecution upon an indictment charging rape, but the solicitor only asked for a conviction of an assault with intent to commit rape. There was a verdict of guilty as to all defendants, and each defendant was sentenced to imprisonment, from which each defendant appealed. According to the record on file in the office of the clerk of this Court, the victim was 18 years of age, and she was allowed over defendants' objections to answer leading questions asked by the solicitor on direct examination in respect to matters of a sexual nature. Defendants assigned this as error. The Court held that permission to ask leading questions was within the sound discretion of the trial judge, that the exercise of such discretion, in the absence of an abuse thereof, will not be reviewed on appeal, and that no prejudicial error has been shown, and the exception cannot be sustained.

In *Flannery v. State, supra,* defendant was convicted of the crime of rape. The victim was at the time an eight-year-old girl. Defendant excepted to the prosecuting officer eliciting from the victim answers in response to leading questions. The Court said:

"We can see no error in the State's attorney asking the witness what appellant did to her unionalls, and eliciting the answer that he (appellant) opened the front of her unionalls; and further eliciting the answer 'Yes sir' to the question 'Did he put his male organ into your female organ?' While such question was leading, nevertheless the rigor of the rule forbidding the asking of such questions bears some flexibility when dealing with a witness of tender years. It is a well-known characteristic that little girls of tender years are usually loath to testify about such matters as this one was called to testify, and sometimes refuse to talk at all, through nervousness or innate modesty, and it appears from the bill that the witness did not answer anything at all when first asked to tell what appellant did after he had thrown her to the

ground, and it necessitated a leading question in order to obtain an answer to such a usually embarrassing question. There was other testimony in the record rather strongly corroborative of Drusilla's, and we do not think any injury was shown herein."

In *Antelope v. United States, supra,* the defendant, a full-blooded Indian, was convicted of the crime of statutory rape upon an Indian girl 13 years of age. The Court said:

"Likewise, the contention that the court committed reversible error in permitting the District Attorney to ask Eldine leading questions is without merit. The prosecuting witness here was a young, timid Indian girl. She was in strange surroundings. The questions, of necessity, were embarrassing to her. She testified in a timid, halting manner. Under these circumstances, it was necessary to ask her some leading questions to elicit from her the material facts. It is sufficient to say that we have examined the record and conclude that no reversible error was committed in permitting such leading questions as were asked."

In the trial of criminal cases it is of the utmost importance that the truth be ascertained, yet, at the same time, it is also of the utmost importance that the fundamental rights of the defendant be protected. The trial court was in a much better position to judge the necessity and propriety of his action in permitting the solicitor to ask the prosecutrix, a fourteen-year-old girl, the leading questions appearing in the record than is this Court. He saw this fourteen-year-old girl and observed the delicacy of the situation. He noted her sensibility to going forward, if not refusal to going forward, and explaining in detail the intimate sexual acts necessary for the State to make out its case. One girl of fourteen years of age might be much more humiliated to testify as to the necessary intimate details essential to the crime here charged than another of the same age. Each case must depend upon its own circumstances, and the trial judge is the person best situated to decide upon the course of conduct necessary to elicit the truth, and yet safeguard the rights of the defendant, and unless this Court can say, from the whole record, he abused his discretion and the defendant was deprived of a fair and impartial trial, we should not disturb the exercise of his discretion in permitting the leading questions to be asked the prosecutrix by the solicitor. Ond looking to the entire record in this case we find this: Rosina's mother testified for the State in substance, except when quoted: Rosina came home "around the edge of dark," and said "she had been off with him." After she whipped Rosina, Rosina told her "she went down behind Mano Ker-

ley's Cafe down there and turned down a dirt road somewhere that led to a chicken house down there and had intercourse with him in the car." She took her to a doctor. Dr. Alex Moffett, a practicing physician and surgeon at Taylorsville, examined the prosecutrix on 25 May 1961, and gave testimony for the State tending to show that she had had a recent sexual intercourse or recently had been carnally abused—the details of which it would serve no useful purpose to set forth. Dr. Moffett testified: "She told him that a man had started to have intercourse with her and had partially succeeeded but she pushed him away; that she did not name the person." Defendant, Orville Pearson, at the time, was 20 years of age. Defendant testifying in his own behalf said, in substance, that about 8:00 p.m. on 24 May 1961 prosecutrix rode with him to the FCX store where he bought two Pepsi-Colas and some gasoline, but he did not lay his hands on her, and did not engage in any sexual act with her. On cross-examination defendant admitted he had been convicted of aiding and abetting in larceny, had been placed on probation, had broken the conditions of his probation, and had served time on the roads. In our opinion, the trial judge did not abuse his discretion in permitting the solicitor to ask the prosecutrix the leading questions appearing in the record under the circumstances of this case, and this did not deprive defendant of a fair and impartial trial. The assignment of error in this respect is overruled.

Defendant assigns as error that the court permitted the mother of Rosina to testify as to what Rosina told her after she whipped her upon her return home, without restricting it to the purpose of corroborating Rosina. Defendant made a general objection to the admission of this evidence, but did not ask, at the time of admission, that its purpose shall be restricted. This assignment of error is overruled. Rule 21 of the Rules of Practice in the Supreme Court, 254 N.C. 783, 803; *S. v. Walker*, 226 N.C. 458, 38 S.E. 2d 531.

Defendant has three assignments of error to the exclusion of evidence offered by him. These assignments of error are not sufficient in form to present the alleged errors relied on, for the reason that these assignments of error, and none of them, do not state clearly and intelligently what questions, or question, are intended to be presented without the necessity of the Court going beyond each, and all, of these assignments of error "on a voyage of discovery" through the record to find the asserted errors, or error, and the precise questions, or question, involved, and such a voyage the Court will not embark on. Rules 19 (3) and 21, Rules of Practice in the Supreme Court, 254 N.C. 783 *et seq.*; *Kleinfeldt v. Shoney's, Inc.*, 257 N.C. 791, 127 S.E. 2d 573, and the cases there cited. In addition, no reason or argument is stated, or authority cited, in defendant's brief in support of these assignments

of error, and they will be taken as abandoned by him. Rule 28, Rules of Practice in the Supreme Court, 254 N.C. 783, 810; *S. v. Strickland*, 254 N.C. 658, 119 S.E. 2d 781.

Defendant assigns as error the denial of his motion for judgment of nonsuit made at the close of all the evidence. In defendant's brief no reason or argument is stated, or authority cited, in support of this assignment of error, and further it is without merit. The State's evidence was amply sufficient to carry the case to the jury.

Defendant's assignment of error to the charge is not tenable. Further, no reason or argument is stated, or authority cited, in defendant's brief in support of this alleged error. It is overruled.

In the trial below we find

No error.