STATE OF NORTH CAROLINA v. LANDON JOHNSON, ROBERT LEE HOLLINGSWORTH AND KING DAVID PURCELL.

(Filed 13 December, 1967.)

**1. Criminal Law § 87—**

It will not be held for error that the court permits the solicitor to ask leading questions which bring forth testimony that could have been otherwise obtained and the testimony brought forth is not objectionable or the import of the testimony is not subject to reasonable dispute but has only the effect of saving time, the matter being in the wide discretion of the trial court.

**2. Criminal Law § 9;  Homicide § 20—**

Evidence tending to show that four defendants agreed to assault a particular person and get his money, that three of them went into such person's house, and that the defendant turning State's evidence hit the deceased in the back of the head with an ax handle a number of times, inflicting mortal injury, that another of defendants stated he was going to finish defendant off and stomped him in the ribs four or five times, and that the three defendants took deceased's billfold containing a sum of money, *is held* sufficient to sustain a conviction of the two defendants pleading not guilty.

**3. Same—**

Evidence that the four defendants agreed to assault a designated person and take his money, that one of the defendants stayed outside as a lookout while the other defendants went into the house and committed the robbery and murder, *held* sufficient to sustain the conviction of the lookout as an aider and abettor, notwithstanding he received no benefit from the stolen money, and such defendant's youth and retarded mentality are matters to be considered by the parole authorities at the proper time.

**4. Criminal Law § 74—**

Where the court hears testimony on the *voir dire* and finds that defendant was amply advised of his constitutional rights and that his statement was voluntary and competent, order admitting the statement in evidence will not be disturbed when the record amply supports the court's findings.

**5. Criminal Law § 5—**

Testimony of an expert that defendant is retarded to some extent but that he could relate his circumstances around the time of the crime in a logical and coherent manner, and that he knew right from wrong, is sufficient to disclose his legal responsibility for his criminal acts.

APPEAL by defendants from *Farthing, J.*, 8 May 1967 Mixed Session HOKE County Superior Court.

Robert Lee Hollingsworth, King David Purcell, Malcom McCoy and Landon Johnson were charged in separate bills of indictment with murder in the first degree of Neill Archie McCormick on 18 December 1966. McCoy entered a plea of guilty and testified for the State. The three other defendants were tried together by consent. All were convicted of murder in the first degree with a recommendation of life imprisonment, from which all defendants appealed.

In its strongest light, the evidence for the State tended to show that the four defendants conspired to go to the home of McCormick, "get him" and take his money. Purcell wanted to buy a 1954 Buick for $75 and intended to use McCormick's money to do so. In a statement made by Johnson, he said: "We had talked about knocking Neill McCormick in the head two weeks [earlier] and taking his money. . . . [We] had talked about this. . . ."

McCoy testified, in summary, that he and the other three defendants were together for several hours, all were drinking, and "Purcell mentioned about hitting Mr. McCormick and getting some money . . . at the time this was mentioned, all four of the persons [defendants] were in the car"; that Purcell said that McCormick "gets a check" and "if we hit him, we will get some." Hollingsworth said, "Let's go get him." The defendants rode around some more and then went to McCormick's house, and all got out of the car and went to the house. As they walked up to the house, Landon Johnson was told he was "supposed to look out — see if anything was coming or going." He was to whistle one time if he heard or saw anybody coming. The other defendants went into the house, except Purcell who remained outside for about five minutes looking inside. McCormick came to the door, turned around and walked back toward the heater. At that time Hollingsworth told McCoy to hit McCormick from the back. McCoy hit him several times with an ax handle and McCormick fell. After he fell, McCormick started to move and Hollingsworth told McCoy to hit him again and to keep

hitting him. He said he hit McCormick about ten times in the head. While McCormick was lying on the floor, Purcell came into the house and said he "was going to finish him off" and stomped Mc-Cormick in the ribs four or five times. They then took McCormick's billfold which contained $65, with which they later sought to buy the 1954 Buick. McCormick died from the injuries inflicted.

Other almost unbelievably cruel and cold-blooded actions of the defendants, being unnecessary to summarize, are omitted.

*Hair & Ruppe by Lacy S. Hair; Hostetler, McNeill & Willcox by R. Palmer Willcox; Moses & Moses by William L. Moses, Attorneys for defendant appellants.*

*T. W. Bruton, Attorney General, by Bernard A. Harrell, Assistant Attorney General, for the State.*

PLESS, J.  The three appealing defendants have filed one case on appeal and one brief. The errors assigned in behalf of Hollingsworth and Purcell deal with "leading questions" which the defendants alleged were permitted by the Court. These questions are not brought forth in the brief, and we are required to go upon a voyage of discovery to locate them. Having done so, we find that they refer largely to the testimony of McCoy and that they are merely directing his attention to the feature of the case about which he was then being examined.

The defendants have several exceptions to the "leading questions" asked by the Solicitor, but in each instance we find them to be harmless and timesaving. Many objections are made to the use of leading questions, but a leading question is not incompetent *per se*. In describing the scene of an event, for instance, where there is no reasonable ground for dispute, leading questions are not only not objectionable but are actually desirable in preliminary descriptions that are necessary to an understanding of the *locus in quo*. A skilled attorney can, in one full descriptive question, paint a picture for the benefit of the Court and jury that could well take a substantial and wasteful length of time to evoke if an unlettered or poorly educated witness is left to describe a scene without suggestion or "leading." The competence of the question should be decided upon whether it is harmful and is likely to result in an answer that could not be otherwise obtained. And so, our courts have wisely and almost invariably held that the presiding judge has wide discretion in permitting or restricting "leading questions." 2 Strong, N. C. Index, Evidence § 57; *McKay v. Bullard*, 219 N.C. 589, 14 S.E. 2d 657; *State v. Cranfield*, 238 N.C. 110, 76 S.E. 2d 353. These exceptions are without merit. Consideration of the objections show that the evi-

dence elicited could have been "otherwise obtained" but at considerable waste of time and that the defendants were not prejudiced by them.

The evidence of the State is to the effect that McCoy hit McCormick with an ax handle eight or ten times and knocked him down, after which Purcell said he was going to "finish him off", and he then stomped him in the ribs several times with his feet. McCormick was dead when they left there. This is quite sufficient to withstand the exceptions of Hollingsworth and Purcell to the refusal of the Court to dismiss the case as to them or to set aside the verdict. This evidence was uncontradicted except by the defendants' formal plea of not guilty.

The appeal of Johnson presents additional exceptions. The defendant Johnson was a sixteen-year-old colored boy of less than average intelligence at the time of his involvement in this murder.

To state the facts of the case, which are practically undisputed, immediately causes unbelief that people in a civilized society could possibly do what the defendants did. The horror and callousness of the murder cause a normal person to doubt that it "could happen here" — but it did. To buy a twelve-year-old car, the participants' cold bloodedly took a human life.

The defendant Johnson did not strike a blow and received no benefit from the stolen money. And yet, upon all the evidence, it was unquestionably sufficient to support the verdict of guilty. "It is thoroughly established law in this State that, without regard to any previous confederation or design, when two or more persons aid and abet each other in the commission of a crime, all being present, all are principals and equally guilty." *State v. Taft*, 256 N.C. 441, 124 S.E. 2d 169.

The defendant Johnson's written admission was, if anything, favorable to him. It was not admitted until the able trial judge had heard from at least four witnesses that the defendant's rights had been fully and completely respected. The judge also heard the testimony of the defendant upon *voir dire*, in which the voluntariness of his statement was substantially admitted. The Court's ruling that the defendant's statement was voluntary and competent was amply supported by the evidence. Johnson admitted his association with his co-defendants and his presence, outside the house, at the time McCormick was struck and stomped by the others.

His court-appointed counsel emphasizes the youth and lack of intelligence of the defendant. The evidence of the specialist who examined and observed the defendant for thirty days was that he was "retarded to some extent" but that he "could relate his circum-

stances around the time . . . in a logical and coherent manner" and that he knew right from wrong.

There is a tendency to excuse and absolve the most cold-blooded and hard-hearted murderers on the theory that normal persons would not commit their inexcusable crimes. We cannot accept this philosophy. To do so would result in leaving society helpless and defenseless against the most inexcusable crimes of horror and violence.

The defendant Johnson is legally responsible for his participation in a calculated robbery resulting in the death of the victim. His rights have been more than fully protected, and he must pay his debt to society. And yet his inactive involvement was such that because of his youth and retarded mentality, he may have hope for consideration by the parole authorities at the appropriate time.

A careful consideration of all the defendants' exceptions reveals them to be without substantial merit.

No error.