STATE OF NORTH CAROLINA v. LEWIS PIERSON WILLIS

No. 48

(Filed 16 June 1972)

1. **Constitutional Law § 29; Jury § 6— prospective jurors — solicitor's questions — death penalty**

In a prosecution for first degree murder, questions which the solicitor asked prospective jurors on *voir dire* were proper for the purpose of determining whether such jurors could, under any circumstances, vote for a verdict which would require imposition of the death penalty.

2. **Homicide § 20— photograph of body — identification**

In this homicide prosecution, the trial court properly allowed the victim's sister to identify the victim by use of a duly authenticated photograph of the victim's body.

3. **Criminal Law § 61— casts of tire tracks — competency**

Evidence relating to casts made of automobile tracks at the place where a homicide victim's body was found was competent to identify the tracks as having been made by an automobile owned by defendant's accomplice and to corroborate the accomplice's testimony that he and defendant had transported the body to the place where it was found; discrepancies as to the dates on which the comparisons were made had bearing on the weight and not the competency of the evidence.

---

State v. Willis

---

4. **Criminal Law § 87— leading questions — discretion of court**
   The allowance of leading questions rests in the sound discretion of the presiding judge and will not be reviewed on appeal absent a showing of prejudice.

APPEAL by defendant from *Rouse, J.,* September 13, 1971 Session, CARTERET Superior Court.

In this criminal prosecution, Lewis Pierson Willis was charged by bill of indictment with the capital offense of murder in the first degree in the killing of Eugene Thomas Givens. According to the bill of indictment, proper in form, the offense occurred in Carteret County on April 10, 1971.

At the formal arraignment the defendant, through court-appointed counsel, entered a plea of not guilty. The court directed that the jury selection be conducted in the manner approved by this Court in *State v. McNeil,* 277 N.C. 162, 176 S.E. 2d 732. After twelve veniremen were called, seated, and sworn to speak the truth concerning their fitness and competency to serve on the jury, the solicitor addressed his inquires to each juror and his replacement. The record does not indicate which side excused which juror. The record does disclose the defendant objected to the solicitor's examinations of all who were called and examined. Altogether 178 veniremen were so examined. It is obvious the solicitor by his questions sought to obtain a jury which was not opposed to capital punishment.

The State's evidence is here given in short summary. On and prior to April 10, 1971, Joseph Dennis Merrill operated The Village Shoppe in Ho Ho Village near Morehead City in Carteret County. Marine Sergeant Eugene Thomas Givens and his wife lived in a house trailer across the road from the Merrill store. Merrill conceived a plan to "eliminate" Givens. He contacted his friend Stroud who made arrangements with the defendant, Lewis Pierson Willis, to do the eliminating. The defendant agreed to kill Givens for $5,000.00 in cash. Merrill borrowed the $5,000.00 from the bank and delivered it to Stroud who notified the defendant the money was ready. The defendant accepted $200.00 from Stroud as a down payment and apparently called his friend, John Braxton Richardson from Norfolk, Virginia, to assist in executing the plan. Richardson came from Norfolk directly to the Willis home, arriving April 9th. Willis identified Givens as the person to be killed.

On the night of April 10, 1971, Merrill invited Givens to visit the rear room of the store after closing time for the purpose of joining him in a drink. Merrill had alerted the defendant, advising him that the rear door would be unlocked and that he (Merrill) would leave the store by way of the front door. Soon after 10 o'clock, Merrill left the store by way of the front door, tipping off the defendant and Richardson that Givens was inside. Willis and Richardson were parked near the store in Richardson's automobile. The defendant entered the store from the rear and in a few minutes returned, saying he had shot Givens four or five times in the head.

The defendant and Richardson placed the body on the automobile which Richardson drove to a dirt road (Merrill's Boulevard) where they dumped it on the side of the road. This occurred just before 11 o'clock. After the body was removed, Merrill returned to the room and attempted to remove the blood stains by scrubbing. Richardson attempted to remove the blood stains from the automobile by washing. Neither was entirely successful because human blood stains were disclosed both on the floor of the room and on the rear of the automobile.

As Marine Lieutenant Michael Green and another officer were returning to their base from Morehead City shortly after 11:30 p.m., they observed the body on the side of the road. Green left his companion, Lieutentant Fredburg, at the body and went to Merrill's store nearby to call officers. A light in the back room of the store was on, but no one answered his knock. From a telephone booth outside, Lieutenant Green called the rescue squad, the Marine Corps, and county officials. One of the officers removed Givens' identification card from the dead body.

The officers made plaster casts of the automobile tire tracks near the body. The autopsy disclosed Givens had died as a result of four bullet wounds in the head. The recovered bullets disclosed they were of thirty-eight caliber.

After the defendant and Richardson left the body, they threw the pistol into the water from a causeway. Richardson returned to Norfolk after receiving $500.00 for his part in the killing. Most of this was recovered when he was arrested on April 11th. $4,800.00 of the money paid to Stroud for Willis was also recovered by the officers. Merrill admitted he bor-

---

State v. Willis

---

rowed $5,000.00 from the bank in Morehead City and gave it to Stroud to be used in the payoff. The evidence indicated Merrill had an affair with Givens' wife. Merrill, however, claimed his differences related to business matters.

The incriminating evidence came from the witnesses, Virgil Stroud, John Braxton Richardson, and Joseph Dennis Merrill, all of whom were under indictment and awaiting trial for participating in the killing. The defendant did not testify and did not offer evidence in his defense.

The jury returned a verdict finding the defendant guilty of murder in the first degree and as a part of the verdict, recommended the punishment be imprisonment for life in the State's prison. From the judgment accordingly, the defendant appealed assigning errors.

*Robert Morgan, Attorney General, by Christine A. Witcover, Associate Attorney, and James F. Bullock, Deputy Attorney General, for the State.*

*Wheatly & Mason by C. R. Wheatly, Jr., for defendant appellant.*

HIGGINS, Justice.

The State's evidence in this case shows a planned gangster type murder in which three of the four involved testified for the State against the fourth who did the actual killing. The alert trial lawyer, who represented the defendant at the trial and argued the case here, entered 264 exceptions. However, the only assignments of error discussed in the brief here are quoted in full:

"1. Did the Court commit error in permitting the solicitor to question the jury on his voir dire examination?

a) To such an extent that he created the impression that the sole issue for the jury was punishment rather than guilt or innocence?

b) By describing a case to be considered as being 'bad', 'horrible'?

"2. Did the Court commit error on the evidentiary rulings in:

a) Permitting testimony as to the identity of an automobile tire track without proper connecting evidence?

b) Permitting the solicitor to elicit testimony by the constant use of leading questions?

c) The use of a photograph and other evidence which served no evidentiary purpose and was used solely to inflame the passions of the jury against the defendant?"

The statement in the brief as to the questions involved may be treated as the abandonment of all others. "Exceptions in the record not set out in appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned by him." Rule 28, Rules of Practice in the Supreme Court, 254 N.C. 783, page 810. *State v. Clayton,* 251 N.C. 261, 111 S.E. 2d 299.

[1] After the arraignment, the court announced the jury selection would proceed in the manner approved in the case of *State v, McNeil, supra; State v. Perry,* 277 N.C. 174, 176 S.E. 2d 729. However, the solicitor addressed his questions to each juror individually. The following is typical:

"Q . . . I'll ask you if you should be chosen to sit on the jury in a murder case—not this case, but a homicide case—I ask you if you could listen to the evidence that comes from the mouths of the witnesses on the witness stand, and the Judge's charge, and then retire to the jury room and the twelve jurors should consider the evidence and find from the evidence and beyond a reasonable doubt that the defendant is guilty, I'll ask you, sir, if then you could consider voting to bring in a verdict that would require the Judge to sentence the defendant to the death penalty?

Objection — Overruled.

"A No, sir.

"Q . . . I'll ask you: Can you imagine a case in which the circumstances are so bad, not this case, and the jury, after having heard the evidence, goes into the jury room and then they find from the evidence and beyond a reasonable doubt that the defendant is guilty, I'll ask you could you then consider voting to bring in a verdict that would require the Judge to sentence the defendant to the gas chamber?"

The solicitor's usual questions ended with that which preceded the answer, "No, sir." However, in a few instances the second question (in substance) was added. The solicitor's examination of the jurors covers ninety-six pages of the record. All questions by defense counsel are omitted. Except in a few instances, the jurors' answers to the questions are also omitted. The solicitor's questions indicate his purpose was to find a jury which was not opposed to capital punishment. Nothing objectionable on the question of guilt or innocence is alleged or discovered. Notwithstanding the solicitor's effort to obtain a jury which would vote for capital punishment, the jury by unanimous agreement fixed the punishment at life imprisonment.

The defendant does not assign as error the selection of any particular juror. The parties stipulated the State exhausted its eight peremptory challenges. The defendant exhausted only thirteen of its fourteen peremptories. The solicitor's questions were intended to determine whether the prospective jurors were qualified in the light of the rules discussed in *Witherspoon v. Illinois,* 391 U.S. 510, 20 L.Ed. 2d 776; *State v. Doss,* 279 N.C. 413, 183 S.E. 2d 671; *State v. Atkinson,* 275 N.C. 288, 167 S.E. 2d 241; *State v. Spence,* 274 N.C. 536, 164 S.E. 2d 593.

[2, 3] We have reviewed the evidence which the court admitted over objection. The review fails to disclose prejudicial error. The defendant's plea of not guilty required the State to prove all material elements of the offense charged, including the identity of the victim. The identification card found on the body was the first step in the identification procedure. The sister of the victim, by the use of a duly authenticated photograph of the body, completed the identification. *State v. Doss, supra; State v. Cutshall,* 278 N.C. 334, 180 S.E. 2d 745; *State v. Atkinson, supra; State v. Porth,* 269 N.C. 329, 153 S.E. 2d 10. The use of casts made of automobile tracks at the place in the highway where the body was found was competent to identify the tracks as having been made by Richardson's automobile. *State v. Westbrook,* 279 N.C. 18, 181 S.E. 2d 572; *State v. Palmer,* 230 N.C. 205, 52 S.E. 2d 908. The discrepancies as to the dates on which the comparisons were made had bearing on the weight and not on the competency of the evidence. Actually, the State's witness Richardson testified without equivocation that he and the defendant transported the body from the

store to Merrill's Boulevard. The tire tracks at the scene corroborated Richardson's testimony.

[4] The claim of error based on the solicitor's leading questions is not well founded. The few leading questions which the court permitted were intended as time saving or as an indication whether further inquiry should be pursued. Leading questions, especially in a long trial, may be time saving and the judge should be trusted to sustain objection if the question and answer appear in any wise prejudicial. Leading questions may be left to the sound discretion of the presiding judge and are not reviewable absent a showing of prejudice. *State v. Doss, supra; State v. Clanton,* 278 N.C. 502, 180 S.E. 2d 5; *State v. Johnson,* 272 N.C. 239, 158 S.E. 2d 95; *State v. Pearson,* 258 N.C. 188, 128 S.E. 2d 251.

The evidence of guilt was overwhelming. The direct evidence was buttressed all along the line by proof of strongly corroborating circumstances.

This Court has reviewed all assignments of error which counsel has discussed in the brief and in the argument. Nothing appears which could have influenced the jury to the prejudice of the defendant. Hence, in the trial, verdict, and judgment, we find

No error.