STATE OF NORTH CAROLINA v. WILLIAM BLANE HENSLEY

No. 28

(Filed 24 January 1978)

**1. Criminal Law § 87.2— leading questions**

The trial court in a rape case did not err in permitting the district attorney to ask leading questions of the twelve-year-old victim who was not familiar with many of the terms used in the questions and of a female witness who could not read and write and did not know her own age.

**2. Criminal Law § 52— expert testimony—opinion based on testimony of other witnesses—hypothetical questions**

Where an expert bases his opinion on facts not within his personal knowledge, such facts should first be testified to by other witnesses and then incorporated, expressly or by reference, in a hypothetical question addressed to the expert. And where an expert witness has personal knowledge of some of the facts of the case, he may base his opinion partly on his personal knowledge or observation of the facts, and partly on the factual evidence of other witnesses hypothetically presented to him.

**3. Criminal Law § 52— medical expert—penetration of rape victim—insufficient foundation—harmless error**

Although a medical expert's opinion testimony that an alleged rape victim had been penetrated by a male organ which deposited sperm in the vagina was technically improper because the State failed to lay a proper foundation for the opinion by including in its hypothetical an assumption that the jury should believe the testimony of another expert, upon which the opinion was partially based, that he took the vaginal smear from the victim, the admission of such opinion testimony was not prejudicial error in view of the abundant amount of other competent evidence of penetration.

**4. Criminal Law § 105— failure to move for nonsuit—appellate review of sufficiency of evidence**

The appellate court will review the sufficiency of the evidence to sustain the verdict even though defendant failed to make motions for nonsuit or directed verdict at the close of the State's evidence and at the conclusion of all the evidence. G.S. 15-173.1.

**5. Rape § 5— sufficiency of evidence of penetration**

The State's evidence was sufficient for the jury in a prosecution for rape where it tended to ·show that defendant took indecent liberties with the twelve-year-old victim by threatening her with a knife, the victim testified that while she was on her back she felt defendant's penis inside her body, an eyewitness testified that defendant had intercourse with the victim while the victim was lying on her back, and a medical expert testified that the victim had a tear in the hymenal ring and that a vaginal smear of the victim showed the presence of active sperm, notwithstanding the testimony of the victim and the eyewitness was at times inconclusive and to some extent conflicting.

State v. Hensley

**6. Rape § 6— failure to define "sexual intercourse"**

The trial court in a rape case did not err in failing to define the term "sexual intercourse" in the absence of a request by defendant for further elaboration on that term.

**7. Constitutional Law § 48— right to effective assistance of counsel**

The right to assistance of counsel guaranteed by the Sixth Amendment of the U.S. Constitution (made applicable to the states by the Fourteenth Amendment) and by Sections 19 and 23 of Article I of the N.C. Constitution includes the right to have the effective assistance of counsel.

**8. Constitutional Law § 48— effective assistance of counsel**

There are no set rules to determine whether a defendant has been deprived effective assistance of counsel; rather, each case must be approached upon an *ad hoc* basis, viewing circumstances as a whole in order to determine this question.

**9. Constitutional Law § 48— defendant not denied effective assistance of counsel**

Defendant was not denied the effective assistance of counsel in his trial for rape because of the failure of his trial counsel to make additional objections or to make motions for judgment of nonsuit or other formal motions where (1) the appellate court reviewed evidence which present counsel contends should have been the subject of objection and found no prejudicial error in the admission of such evidence even if objection had been made at the proper time, (2) the motions, if made, would have been properly denied, and (3) the record shows that defendant's trial counsel conducted extensive cross-examination of the State's witnesses, entered numerous objections to evidence offered by the State, and presented direct evidence on behalf of defendant in the form of testimony by defendant and his mother.

**10. Constitutional Law § 48— failure of original counsel to perfect appeal—absence of prejudice**

Defendant was not prejudiced by failure of his original court-appointed counsel to perfect his appeal to the Supreme Court where the Court allowed defendant's petition for certiorari by his present court-appointed counsel and fully reviewed the case in the same manner and to the same extent as if there had been no failure by the original counsel to perfect the appeal.

APPEAL by defendant from *Thornburg, J.,* at the 8 November 1976 Session of BURKE Superior Court.

Defendant was tried and convicted of first degree rape of Betty Philbeck and was sentenced to life imprisonment.

The State introduced evidence tending to show that the defendant, William Blane Hensley, a forty-two-year-old man, was living with Lois Lowery in a trailer in Drexel. Betty Philbeck, a twelve-year-old girl and the alleged victim of the rape, was stay-

ing with defendant and Lois during the week of 30 July 1976. The three were in the habit of sleeping together. On the evening of 30 July, Betty, Lois and defendant went to bed together. Betty testified that the defendant had a pocket knife, that he threatened her and Lois with the knife, and that he then proceeded to take indecent liberties with her; that he stuck his penis and his finger in her anus and vagina; and that while doing so he continued to threaten the two females with his knife, stating that he would cut them if they did not lie still. Betty stated that defendant put his penis into her vagina. Lois testified that Betty was on her back, and that defendant was lying on top of Betty and had his penis in her. Similar types of conduct continued throughout most of the night.

Dr. A. W. Hamer checked Betty on the evening of 30 July. He found her hymen slightly ruptured. Dr. John C. Reece examined a vaginal smear taken from Betty by Dr. Hamer. He testified that he found several inactive sperm in the smear and that in his opinion she had been penetrated by a male organ and sperm was so deposited in her vagina.

Defendant's testimony tended to show that he drank some sixteen beers on the evening of 29 July, and that he passed out on the bed. Defendant testified that he did not remember anything until he awoke the next morning. When he awoke Betty and Lois were still in the bed with him. Later, when he got up, everything appeared to be normal. Defendant's mother testified that in August 1976 Lois Lowery told her that defendant did not touch Betty at any time.

Other facts necessary to the decision of this case will be discussed in the opinion.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Thomas B. Wood for the State.*

*C. Scott Whisnant for defendant appellant.*

MOORE, Justice.

[1] Defendant's first assignment of error is directed to two allegedly leading questions directed to Betty, the prosecuting witness, and to two such questions directed to the witness, Lois Lowery.

We see no merit in this assignment.

The trial court has discretionary authority to permit leading questions in proper instances, and absent a showing of prejudice the discretionary action of the trial court will not be disturbed. *State v. Young,* 291 N.C. 562, 231 S.E. 2d 577 (1976); *State v. Willis,* 281 N.C. 558, 189 S.E. 2d 190 (1972); *State v. Pearson,* 258 N.C. 188, 128 S.E. 2d 251 (1962). If the testimony is competent and there is no abuse of discretion, defendant's exception thereto will not be sustained. *State v. Brunson,* 287 N.C. 436, 215 S.E. 2d 94 (1975); *State v. Young, supra.*

In *State v. Pearson, supra,* a case in which defendant was charged with carnally knowing and abusing a child over 12 years and under 16 years of age, Justice Parker (later Chief Justice) stated:

"Generally, leading questions are permissible to arrive at facts when modesty or delicacy prevents full answers to general interrogatories. Hence, because of the delicate nature of the subject of inquiry, many courts have recognized and held that rape and carnal abuse cases, and other cases involving inquiry into delicate subjects of a sexual nature, constitute an exception to the general rule against leading questions, and that in such cases the permitting of leading questions of the prosecutrix, particularly if she is of tender years, is a matter within the sound discretion of the trial judge. [Citations omitted.]"

In view of the fact that Betty was a child twelve years of age and was not familiar with many of the terms used in the examination, and that Lois was an ignorant woman who could not read or write and did not know her own age, the trial court correctly allowed the questions here involved. No abuse of discretion is shown and this assignment of error is overruled.

Dr. Hamer, who examined the prosecuting witness, testified in detail concerning his examination and his extraction of the vaginal smear from her. This smear, taken from the prosecuting witness, was examined by Dr. Reece, who testified that an examination of the vaginal smear revealed that sperm were present, and that the sperm were fresh and active at the time they were taken out of the victim's vagina. The following then occurred:

"Q. Dr. Reece, based on your examination and analysis of the slide, what does that indicate to you with regard to what happened to Betty Philbeck?

A. In my opinion based on the information that I had available to me and that I have heard in Court and on my findings, that this individual, Betty Philbeck, had been penetrated by a male organ producing and depositing sperm within the vagina."

Defendant contends that the court erred in failing to strike the answer of Dr. Reece. In support of this contention defendant cites *State v. David*, 222 N.C. 242, 22 S.E. 2d 633 (1942). In that case the doctor who testified based his opinion upon the findings of the physician who had testified earlier; his opinion was not based upon his own findings. There we stated: ". . . it is uniformly held that the opinion of one expert based upon that of another is incompetent and inadmissible as evidence." *See also Ingram v. McCuiston*, 261 N.C. 392, 134 S.E. 2d 705 (1964).

[2] The rule in *State v. David, supra*, is not, however, applicable in the present case. This is not an instance where one expert bases his opinion on the opinion of another expert. Rather it is a situation where one expert bases his opinion in part on facts testified to by another witness, *i.e.*, Dr. Hamer's testimony that the smear was taken from the victim's vagina. Where an expert bases his opinion on facts not within his personal knowledge, such facts should first be testified to by other witnesses and then incorporated, expressly or by reference, in a hypothetical question addressed to the expert. Stansbury, North Carolina Evidence, Sec. 136 (Brandis Rev. 1973); *Taylor v. Boger*, 289 N.C. 560, 223 S.E. 2d 350. Where, as here, an expert witness has personal knowledge of some of the facts of the case, he may base his opinion partly on his personal knowledge or observation of the facts and partly on the factual evidence of other witnesses hypothetically presented to him. *State v. David, supra; Taylor v. Boger, supra.*

The fact upon which Dr. Reece partially based his opinion had been testified to by another witness, Dr. Hamer, and Dr. Reece was present in the courtroom and heard such testimony. The jury also had the opportunity to assess the credibility of the testimony of Dr. Hamer that he had taken this smear from the vagina of Betty Philbeck, a fact which was actually not in dispute.

Dr. Reece also testified that the smear examined by him was listed in the laboratory as having been taken from Betty Philbeck. Finally, there was abundant evidence in the case showing penetration, in addition to the testimony given by Dr. Reece.

In the present case, the witness's answer would have been proper had the prosecutor only added to his question the phrase, "Assuming that the jury should believe Dr. Hamer's testimony that the vaginal smear was taken from the person of Betty Philbeck . . ." or some other such form of the hypothetical. *Cf.* Stansbury, North Carolina Evidence, Sec. 137 (Brandis Rev. 1973); *State v. Griffin,* 288 N.C. 437, 219 S.E. 2d 48 (1975); *State v. Keene,* 100 N.C. 509, 6 S.E. 91 (1888). Aside from this fact, it is clear that Dr. Reece's opinion was based on his personal observation of the smear and his knowledge as an expert.

In *State v. Temple,* 269 N.C. 57, 152 S.E. 2d 206 (1966), a similar question arose. There, the medical expert, Dr. Satterfield, was asked if he had an opinion satisfactory to himself, based on his examination of the prosecuting witness and the information he had, as to whether the prosecuting witness's female organ was penetrated, and, if so, by what was it penetrated. Dr. Satterfield replied in substance that in his opinion from the laboratory findings her female organ was penetrated full depth by a man's male organ. The defendant in that case contended that the testimony of the expert was incompetent because he was permitted to give his opinion based not only upon his personal examination of the victim, but also upon "the information he had", and that this would permit the expert to rely upon rumor, defendant's purported confession and other things. Answering this contention, we said:

> "Even if we concede that the challenged evidence of Dr. Satterfield was incompetent [Citations omitted], we think, and so hold, that its admission in evidence was not prejudicial, and that it is likely a different result would not have been reached if this challenged evidence had been excluded. . . ."

Noting the abundant amount of other competent evidence showing penetration, the Court further held that the admission of incompetent evidence will not be held prejudicial when its import is abundantly established by competent testimony.

[3] In the case at bar, although Dr. Reece's testimony was technically improper in that the State failed to lay a proper foundation for his opinion, we hold that defendant has failed to show any prejudice and to show that the jury would likely have reached a different result had this evidence been excluded. *State v. Cousins,* 289 N.C. 540, 223 S.E. 2d 338 (1976); *State v. Temple, supra.* This assignment is overruled.

[4] Next, defendant contends that the trial court erred in failing to direct a verdict for defendant at the close of the State's evidence or at the close of all the evidence. Under G.S. 15-173.1, "the sufficiency of the evidence of the State in a criminal case is reviewable upon appeal without regard to whether a motion has been made pursuant to G.S. 15-173 in the trial court." Hence, we review the sufficiency of the evidence in this case to sustain the verdict, even though defendant failed to make motions for nonsuit or directed verdict at the close of the State's evidence and at the conclusion of all the evidence. *State v. McKinney,* 288 N.C. 113, 215 S.E. 2d 578 (1975); *State v. Everette,* 284 N.C. 81, 199 S.E. 2d 462 (1973).

A motion to nonsuit in a criminal case requires consideration of the evidence in the light most favorable to the State, and the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom. *State v. McKinney, supra; State v. Cutler,* 271 N.C. 379, 156 S.E. 2d 679 (1967). Only evidence favorable to the State is considered, and contradictions and discrepancies, even in the State's evidence, are for the jury and do not warrant nonsuit. *State v. Rigsbee,* 285 N.C. 708, 208 S.E. 2d 656 (1974); *State v. Price,* 280 N.C. 154, 184 S.E. 2d 866 (1971).

[5] Betty Philbeck testified that while she was on her back she felt defendant's penis inside her body, and Lois Lowery testified that defendant had intercourse with Betty while Betty was on her back. Dr. Hamer testified Betty had a tear in the hymenal ring, and an examination of the vaginal smear taken from the prosecuting witness showed active sperm in the vagina. This was clearly sufficient to carry the case to the jury regardless of the fact that at times the testimony of the prosecuting witness and of Lois Lowery was inconclusive and to some extent conflicting. Any

discrepancy or conflict was for the jury to resolve. This assignment of error is overruled.

[6]  Defendant admits that the trial court correctly charged the jury concerning the elements constituting the crime of rape, but contends that the court erred in failing to define the term "sexual intercourse". In *State v. Vinson*, 287 N.C. 326, 215 S.E. 2d 60 (1975), the trial judge charged the jury: "For you to find defendant guilty of rape, the State must satisfy you from the evidence and beyond a reasonable doubt of three things. First, that the defendant, Ernest John Vinson had sexual intercourse with the alleged victim, Norma Coleen Ferguson. . . ." Defendant in that case assigned as error the trial court's failure to define the term "sexual intercourse". Justice Huskins, speaking for the Court, said:

"'. . . There is "carnal knowledge" or "sexual intercourse" in a legal sense if there is the slightest penetration of the sexual organ of the female by the sexual organ of the male.' [Citations omitted.] In this respect the law does not require any particular phraseology in stating that the defendant had carnal knowledge of the complaining witness. [Citation omitted.] Accordingly, in *State v. Bowman*, 232 N.C. 374, 61 S.E. 2d 107 (1950), this Court held that testimony of a complaining witness that defendant had 'intercourse' with her was sufficient to warrant a finding by the jury that there was penetration of her private parts. [Citation omitted.] It necessarily follows that the term 'sexual intercourse' encompasses actual penetration. [Citations omitted.]"

Justice Huskins then concluded:

"We are of the opinion that the instructions sufficiently relate the law of rape to the evidence presented . . . . [T]he term 'sexual intercourse' conveyed the idea of completed intercourse, including actual penetration, and the jury must have so understood." 287 N.C. at 341-42, 215 S.E. 2d at 71-72.

If the defendant desired further elaboration on the term "sexual intercourse" he should have so requested at the time. This assignment of error is overruled.

Mr. Harold Robinson, attorney, was appointed to represent defendant at trial, and after verdict, to perfect defendant's ap-

peal. Mr. Robinson failed to perfect the appeal and on 29 March 1977 the assistant district attorney filed a motion to dismiss the appeal. Thereafter, Judge Snepp entered an order relieving Robinson as attorney for defendant and appointed present counsel, C. Scott Whisnant, to prosecute the appeal. Defendant now contends that he was denied his constitutional right to effective assistance of counsel during the trial.

[7] The right to assistance of counsel is guaranteed by the Sixth Amendment of the United States Constitution (made applicable to the States by the Fourteenth Amendment, *Avery v. Alabama*, 308 U.S. 444, 84 L.Ed. 377, 60 S.Ct. 321), and by Sections 19 and 23 of Article I of the North Carolina Constitution. This right is not intended to be simply an empty formality but is intended to guarantee effective assistance of counsel. *State v. Sneed*, 284 N.C. 606, 201 S.E. 2d 867 (1974); *Powell v. Alabama*, 287 U.S. 45, 77 L.Ed. 158. Usually, the question of alleged failure of counsel to render effective representation arises on post conviction proceedings. However, the question can be considered on direct appeal. *State v. Sneed, supra.*

[8] There are no set rules to determine whether a defendant has been deprived effective assistance of counsel; rather each case must be approached upon an *ad hoc* basis, viewing circumstances as a whole in order to determine this question. Justice Branch in *State v. Sneed, supra,* stated:

"... A review of these decisions indicates the general rule to be that the incompetency (or one of its many synonyms) of counsel for the defendant in a criminal prosecution is not a Constitutional denial of his right to effective counsel unless the attorney's representation is so lacking that the trial has become a farce and a mockery of justice. [Citations omitted.]

"Consistent with the above stated general rule, it has been held that the question of Constitutional inadequacy of representation cannot be determined solely upon the amount of time counsel spends with the accused or upon the intensiveness of his investigation. [Citations omitted.] Neither does the Sixth Amendment guarantee the best available counsel, errorless counsel, or satisfactory results for the accused. [Citations omitted.] Nevertheless, counsel cannot assume the

role of *amicus curiae, Ellis v. United States*, 356 U.S. 674, 2 L.Ed. 2d 1060, but must function in the active role of an advocate. *Entsminger v. Iowa*, 386 U.S. 748, 18 L.Ed. 2d 501. Nor can counsel be hobbled by divided loyalties. [Citations omitted.]"

[9] In present case, Mr. Robinson was appointed counsel for defendant on 2 August 1976. The case was called for trial on 9 November 1976. There is nothing in the record to indicate Mr. Robinson failed to confer with his client or that defendant was dissatisfied with his attorney prior to or during the course of the trial. Defendant's counsel now, however, alleges that defendant was deprived of his effective assistance of counsel for the following reasons:

"1. The record itself is devoid of objections except in a very limited capacity.

2. There were no objections made to obvious leading questions to witnesses even though testimony elicited on direct examination tended to refute the need for those leading questions.

3. There was no motion made to quash nor was there a motion made for a directed verdict at the end of the State's evidence nor at the end of all of the evidence.

4. There was no objection made after the Jury returned its verdict to set aside the verdict or for arrest of judgment."

Present counsel has inserted in the record objections to testimony which he would have made at trial. We have carefully considered each of these objections as if objections had been made at the proper time.

The indictment was proper, so a motion to quash would have been useless. Under G.S. 15-173.1 we have reviewed the sufficiency of the evidence to go to the jury as if motions for judgment as of nonsuit had been made. Here there was ample evidence to go to the jury and to support the verdict. A motion to set aside the verdict as being contrary to the evidence is addressed to the sound discretion of the trial judge whose ruling is not reviewable on appeal in the absence of manifest abuse of discretion. *State v. Armstrong*, 287 N.C. 60, 212 S.E. 2d 894 (1975); *State v. Massey*, 273 N.C. 721, 161 S.E. 2d 103 (1968). No abuse of discretion is

shown. A motion in arrest of judgment is one made after verdict and is based upon the insufficiency of the indictment or some other fatal defect appearing upon the face of the record. *State v. Armstrong, supra; State v. Davis*, 282 N.C. 107, 191 S.E. 2d 664, (1972). No such defect appears in this case. We fail to see, therefore, how defendant was prejudiced by failure of trial counsel to make additional objections, or to make motions for judgment as of nonsuit or other formal motions.

The record does disclose, moreover, that defendant's trial counsel conducted extensive cross-examinations of the State's witnesses, entered numerous objections to evidence offered by the State, and presented direct evidence on behalf of defendant in the form of defendant's own testimony and that of his mother.

In *United States v. Handy*, 203 F. 2d 407 (3rd Cir. 1953), the Court stated that in the absence of such gross incompetence or faithlessness of counsel as to make it apparent to the trial judge and call for action by him, it would be destructive of the relationship of counsel and client to permit the trial judge to dictate to counsel his trial strategy in defending his client's interest or to permit the defendant, after conviction, to question that strategy and in effect put counsel on trial with respect to it.

In present case, the able and experienced trial judge who was present and who observed the conduct of the trial counsel did not at any time during the trial intimate that the counsel for defendant had in any manner neglected to represent his client to the best of his ability. To the contrary, after the trial was concluded, the trial judge appointed the trial attorney to perfect defendant's appeal, thereby ruling in effect that Mr. Robinson had, to that point, performed his duties faithfully and competently. Nothing in the record indicates any divided loyalty on the part of trial counsel, or any lack of skill or diligence in investigating the case or presenting the defenses available to defendant.

We hold, therefore, that under the facts of this case the defendant, William Blane Hensley, was not denied effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution and Article I, Sections 19 and 23 of the Constitution of North Carolina.

[10] Finally, defendant contends that he should be granted a new trial because his trial counsel failed to perfect his appeal.

This contention is without merit. As soon as this failure was discovered Judge Snepp appointed the present able counsel to perfect the appeal. We allowed certiorari so that the appeal could be docketed and the case brought before us for review. We have reviewed this case in the same manner and to the same extent as if there had been no failure by the original counsel to perfect the appeal. Thus defendant has in no way been prejudiced. *State v. Mathis*, 293 N.C. 660, 239 S.E. 2d 245 (1977). This assignment of error is overruled.

We have carefully examined the entire record and conclude that defendant received a fair trial, free from prejudicial error. The verdict and judgment must, therefore, be upheld.

No error.