STATE OF NORTH CAROLINA v. JOE LEE BARNES

No. 268A82

(Filed 3 November 1982)

**Rape and Allied Offenses § 6— second degree rape—penetration with sex organ— erroneous failure to instruct**

Where, in a prosecution for second degree rape, the evidence of penetration by a male sex organ was weak, there was a suggestion from the examining physician that penetration could have been by some other object, and a prior erroneous instruction on second degree sexual offense which equated sexual intercourse with penetration of an object might have misled the jury,

the trial court erred in failing to instruct the jury that in order to convict defendant of second degree rape, it must find beyond a reasonable doubt that defendant penetrated the sex organ of the prosecutrix with his sex organ.

DEFENDANT appeals pursuant to G.S. § 7A-30(2) from a decision of a divided panel of the Court of Appeals affirming his conviction of second degree rape, judgment entered 20 May 1981 in Superior Court, DUPLIN County, by *Barefoot, J.*

Defendant was indicted on charges of second degree rape, common law robbery, and assault with a deadly weapon with intent to kill. He pled guilty to common law robbery. A jury found him not guilty on the assault charge and guilty of second degree rape. He was sentenced to not more than forty nor less than thirty years imprisonment.

*Rufus L. Edmisten, Attorney General, by Wilson Hayman, Associate Attorney, and William F. Briley, Assistant Attorney General, for the State.*

*Malcolm R. Hunter, Jr., Assistant Appellate Defender, Adam Stein, Appellate Defender, Attorneys for Defendant-Appellant.*

MEYER, Justice.

Defendant assigns as error the trial court's failure to properly instruct on an element of second degree rape, and its failure to submit the lesser included offense of simple assault. For error in the charge on an essential element of the crime of second degree rape defendant is entitled to a new trial.

The victim of the alleged rape was 89 year old Anna Newkirk. We glean from her testimony in the record that on 28 March 1981, the defendant entered Ms. Newkirk's home, pushed a pillow against her mouth, "ravished" her, and left with approximately $2,000 of her money. Her testimony included the following: "[H]e got my pillow, he took and smothered me and I was under-conscious. I didn't know nothing. I was near about gone." "I'm not over it yet. My mouth is out of shape." When questioned about the alleged rape, Ms. Newkirk testified that defendant "just done what he wanted and I was under conscious then," and when pressed further, she stated that defendant "ravished" her.

Following the incident, Ms. Newkirk was taken to a hospital where she was examined by a physician. The physical evidence of

rape was inconclusive. At trial, Dr. Corazon Ngo Simpson testified:

> I discovered a vaginal tear. There was no blood. If this was done on younger lady, it would have—I'm sure it would have blood in it. But being in a woman that age and being—the vagina being atrophic, there may be some atrophy in the blood vessels producing no blood after the tear. In other words, the being—the fact that there was no blood after it was torn could be due to her atrophic vagina—old age—vagina. There being no blood I can't say whether the tear was recent or not. I can't tell exactly the time. I can't be sure about that.
>
> It is my opinion that there had been some kind of penetration in the vagina. I don't know if the penetration was by a male organ or not. We took some specimen from the vagina and the specimen was turned over to the State and I don't have the result of it. I am not able to say what made the penetration. All I know is there was a tear in there. This penetration could have been made by some object or by a finger or hand or something like that.

The State did not introduce into evidence the results of specimens taken from the vagina or pubic hair combings.

The defendant testified on his own behalf. He admitted going to Ms. Newkirk's home on the afternoon of 28 March 1981, as he had done on prior occasions, to assist in lighting her heater or take care of small chores. On this afternoon he noticed a little black bag with two stacks of money in it. According to defendant, it "seem like it was just sitting there for me," and in response to this singularly unique opportunity, he "snatched the money and . . . cuffed it down." Ms. Newkirk objected and began "to holler." Defendant picked up a pillow with which to quiet the woman. However, he got nervous, threw it "down just like that right in her face and took off" as Ms. Newkirk called after him, "Bring me my money back you strumpet." Defendant denied having any kind of sexual relations with Anna Newkirk and stated that he "didn't even get that close to her to choke her."

Defendant was apprehended by law enforcement officers the next day and the money was recovered. After his arrest he made

a statement which included the following: "I saw the big money. I had part of it. I took a pillow and held it over her face until she passed out, then I took the money and Freddie Lee came in and he was having sex with her." When defendant was confronted with this statement at trial, he stated that he did not recall making the statement because he was drunk at the time it was made.

After summarizing the evidence presented at trial, Judge Barefoot erroneously instructed the jury on second degree sex offense, rather than on second degree rape, as follows:

> And I charge for you to find the defendant guilty of second degree sex offense, the State must prove three things to you beyond a reasonable doubt: First, that the defendant engaged in sexual act with Anna Newkirk. Sexual act means any <u>penetration however slight by an object into the genital opening of the person's body;</u> second, that the defendant used or threatened to use force sufficient to overcome any resistance Anna Newkirk might have or might make; third, that Anna Newkirk did not consent and it was against her will. So, I charge that if you find from the evidence beyond a reasonable doubt that on or about March 28, 1981, Joe Lee Barnes engaged in <u>sexual intercourse</u> with Anna Newkirk and he did so by placing a pillow over her face and choking her and that was sufficient to overcome any resistance which Anna Newkirk might make and Anna Newkirk did not consent and it was against her will, it would be your duty to return a verdict of second degree sexual offense. (Emphasis added.)

Thus, as evident from the underlined portions of the instruction, the trial court equated "sexual intercourse" with "penetration however slight by an object."

Following a discussion at the bench, the trial court then stated:

> Members of the jury, I am informed by the District Attorney that it should be second degree rape and I am going to charge you to that. Now, you will disregard what I have said to you with reference to second degree sexual offense. This is what you will be guided by:

[Defendant has been accused of second degree rape, which is forcible sexual intercourse with a woman against her will. Now, I charge that for you to find the defendant guilty of second degree rape, the State must prove three things to you beyond a reasonable doubt. First, that the defendant had <u>sexual intercourse</u> with Anna Newkirk. Second, that the defendant used or threatened to use force sufficient to overcome any resistance that she might make. Third, that Anna Newkirk did not consent and it was against her will. So I charge that if you find from the evidence beyond a reasonable doubt that on or about March 28, 1981, Joe Lee Barnes by the use of force—a pillow and choking had <u>sexual intercourse</u> with Anna Newkirk without her consent and against her will, it would be your duty to return a verdict of guilty of second degree rape.]

Defendant first assigns as error the trial court's failure to instruct the jury that in order to convict him of second degree rape, it must find beyond a reasonable doubt that the defendant penetrated Ms. Newkirk's sex organ with his sex organ. By failing to do so, argues defendant, the trial judge left open an inference in the minds of the jurors, who had earlier heard the instruction on second degree sex offense, that the "sexual intercourse" required under the second degree rape instruction could consist of "any penetration however slight by an object into the genital opening of the person's body." In light of the total absence of any direct testimony at trial that defendant did, in fact, penetrate Ms. Newkirk's sex organ with his sex organ, we agree that the failure of the trial judge to include the explicit language of this element of the offense was prejudicial error.

In order to satisfy the requirement of vaginal intercourse, as defined at the time of the alleged offense, G.S. § 14-27.3 (Cum. Supp. 1979), it was necessary to establish penetration by the male sex organ of the female sex organ. *State v. Cross*, 284 N.C. 174, 200 S.E. 2d 27 (1973); *State v. Sneeden*, 274 N.C. 498, 164 S.E. 2d 190 (1968). However, as the State correctly points out in its brief, the failure of the trial court to define "sexual intercourse" in its instructions to the jury is not usually error. *State v. Thacker*, 301 N.C. 348, 271 S.E. 2d 252 (1980); *State v. Hensley*, 294 N.C. 231, 240 S.E. 2d 332 (1978); *State v. Vinson*, 287 N.C. 326, 215 S.E. 2d 60 (1975), death sentence vacated, 428 U.S. 902 (1976).

Here the only evidence from which penetration could even be inferred was Ms. Newkirk's characterization of defendant's act, "he ravished me," and Dr. Simpson's testimony that upon physical examination of Ms. Newkirk, he found a vaginal tear resulting from some kind of penetration. Dr. Simpson testified that he couldn't say whether the tear was recent or not and that the "penetration could have been made by some object or by a finger or hand or something like that." This Court and the North Carolina Court of Appeals have refused to require special instructions beyond the phrase "sexual intercourse" as to this element of rape when there is *plenary evidence* before the jury that the female sex organ had been penetrated by the male sex organ. *State v. Ashford,* 301 N.C. 512, 272 S.E. 2d 126 (1980); *State v. Thacker,* 301 N.C. 348, 271 S.E. 2d 252; *State v. Hensley,* 294 N.C. 231, 240 S.E. 2d 332; *State v. Vinson,* 287 N.C. 326, 215 S.E. 2d 60; *State v. Banks,* 31 N.C. App. 667, 230 S.E. 2d 429 (1976).[1] But where, as in the case at bar, (1) the evidence of penetration by a male sex organ is weak, (2) there is a suggestion from the examining physician that penetration could have been by some *other* object, and (3) a prior erroneous instruction on second degree sex offense, equating sexual intercourse with penetration of an object might have misled the jury, the failure to instruct on the penetration element of the offense is prejudicial error. Under these circumstances it was necessary for the trial judge to have included, in his instruction on second degree rape, language sufficient to establish that penetration must be of the female sex organ by the male sex organ.

Defendant next contends that the trial court committed reversible error by failing to submit the lesser included offense of assault where the State's evidence was not positive as to every

1. The record on appeal in *Ashford* discloses that both his victims and the defendant testified that there had been "intercourse" and "sexual intercourse." In *Thacker,* medical tests established that the complaining witness had rope burns and had recently engaged in vaginal intercourse; in *Hensley,* medical tests revealed spermatozoa in the victim's vagina, a medical expert testified that the victim had been penetrated by a male sex organ, and both the victim and an eyewitness testified that the defendant's penis was in the victim's vagina; in *Vinson,* the complaining witness testified that the defendant "actually penetrated" her and raped her twice and medical tests revealed recent intercourse and active spermatozoa in her vagina; and in *Banks,* medical tests revealed a white secretion in the vagina, the complaining witness testified explicitly about the forced vaginal intercourse, and the defendant confessed to the offense.

element of second degree rape and where there was sufficient evidence of assault to support a conviction of that crime. Our decision to grant defendant a new trial on the first issue renders a resolution of this issue unnecessary as it is unlikely to recur at trial.

The decision of the Court of Appeals is reversed. For error in the court's instructions to the jury, defendant is entitled to a new trial.

Reversed.