State v. Banks

No. 761SC569

(Filed 15 December 1976)

1. **Constitutional Law § 37; Criminal Law § 75— waiver of right to counsel — admissibility of confession**

   Evidence was sufficient to support the trial court's findings and conclusion that defendant knowingly and intelligently waived his right to have counsel present during interrogation, and freely and understandingly made inculpatory statements admissible in a prosecution against him for rape.

2. **Rape § 5— sufficiency of evidence**

   Evidence was sufficient to be submitted to the jury in a prosecution for rape where it tended to show that defendant broke and entered the home of the victim and found her sleeping; defendant forcibly raped the victim using his hands and threats to accomplish the rape; the victim testified that defendant penetrated her twice and that she attempted to resist him throughout the encounter, never consenting to have intercourse with defendant; the victim positively identified defendant as the rapist; and defendant confessed that he had raped the victim.

APPEAL by defendant from *Peel, Judge.* Judgment entered 13 February 1976 in Superior Court, PERQUIMANS County. Heard in the Court of Appeals 16 November 1976.

Defendant was indicted for second degree rape and breaking and entering with intent to rape. The jury returned a verdict of guilty on the second degree rape charge and not guilty of felonious breaking and entering. From judgment sentencing him to a prison term of not less than 22 nor more than 26 years, defendant appealed.

*Attorney General Edmisten, by Assistant Attorney General Charles J. Murray, for the State.*

*John V. Matthews, Jr., for defendant appellant.*

VAUGHN, Judge.

[1] Defendant brings forward 4 assignments of error which have been grouped into 3 arguments. In the first argument, he contends that the court erred in finding that he knowingly and intelligently waived his right to have counsel present during interrogation, thus making any statements made by him inadmissible at trial. It is a well-settled rule that one may waive counsel if he does so freely and voluntarily and with full understanding that he has the right to be represented by an attorney. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694; *State v. Lynch,* 279 N.C. 1, 181 S.E. 2d 561.

"A minor who has arrived at the age of accountability for crime may waive counsel in the manner provided by law and make a voluntary confession without the presence of either counsel or an adult member of his family provided he fully understands his constitutional rights and the meaning and consequences of his statement." *State v. Lynch, supra.*

After the *voir dire* hearing to determine the admissibility of defendant's confession, which was made during an in-custody interrogation, the trial judge made the following pertinent findings of fact:

"(5) That the defendant thoroughly understood his rights, as explained by Mr. Brinson, and he affirmatively waived his right to have counsel present for the interrogation, and freely, voluntarily, and without promise, fear, or compulsion began to answer questions.

\* \* \*

(9) That after the defendant was confronted with this information, [portions of Gina Lightfoot's statement], the defendant began to cry; that he did not cry as a result of anything done to him or said to him by the sheriff, or Mr. Brinson, or any other officer, that this occurred about 7:45 or 8:00; that Sheriff Broughton told him to cry all that he wanted to, and after he had stopped offered him a drink of some sort; that after the defendant stopped crying, in response to questioning by the sheriff, the defendant said that he had raped Gina Lightfoot; that several times during the questioning the defendant was advised that he could quit answering questions any time he wanted to. That the

defendant was not threatened in any manner to coerce him to make any statement, and that he was given no reward or promise or hope of reward to make any statement. That the defendant testified that he had understood his rights, and that no threat or promise had been made to him to cause him to give the statements. Any fear that the defendant may have testified to, did not result from anything the officers said or did to him. That the officers were nice to him and cooperated with him both times that he was questioned. That the defendant did not ask Sheriff Broughton, or Mr. Brinson, or any officer or anyone, to see his parents or a friend. That at the time the defendant's father came to the jail the defendant had already made the statement that he had raped her, and at that time the officers were winding up the questions. That as soon as the father came to the jail, Sheriff Broughton went to see him and immediately returned and told the defendant that his father was there, and that the defendant told the sheriff he did not desire to see his father.

(10) That the following morning, Mr. Brinson, about 9:30 a.m. again advised the defendant of his Constitutional rights, as set out in the Miranda decision; that the defendant thoroughly understood his rights and again specifically and affirmatively waived his right to have counsel present with him for the interrogation; that he had talked to his father during the night; that Mr. Brinson wanted to clear up certain other details in his investigation, particularly about how the defendant had gotten in the window; that no force or threats or promise of any sort were made to the defendant to cause him to make his said statements as he may have made the following morning to Mr. Brinson were freely, understandingly and voluntarily made without any force or coercion of any sort being practiced upon the defendant, and without any reward or the hope of any reward to the defendant to cause him to make said statements.

(11) That on both occasions the defendant's statements were freely, understandingly and voluntarily given without any threat or promise of any sort on the part of the officers; that no mental coercion was practiced on the defendant in any respect."

Based upon these and other findings of fact, the court concluded that defendant freely and voluntarily waived his right

to have counsel present at both of the in-custody interrogations and that he, during those interrogations freely, voluntarily, understandingly and without fear or compulsion of any sort and without reward or hope of reward, made statements which were admissible into evidence. Since the findings of facts and the conclusions of law of the trial court are supported by competent evidence, they are conclusive on appeal. Defendant's statements were, therefore, properly admitted as evidence. The assignment of error is overruled.

[2]   Defendant's next argument is that the court should have granted his motion for nonsuit at the conclusion of all the evidence. When reviewing a denial of a motion to dismiss, the evidence for the State, considered in the light most favorable to it, is deemed to be true and inconsistencies or contradictions therein are disregarded. Any evidence of the defendant which is favorable to the State is considered, but his evidence which is in conflict with that of the State is not considered upon such motion. *State v. Price*, 280 N.C. 154, 184 S.E. 2d 866. The evidence taken in the light most favorable to the State is as follows:

On the morning of 20 August 1975, defendant broke and entered the residence of Leroy Lightfoot by way of a bedroom window and found Gina Lightfoot, Lightfoot's 13-year-old daughter, asleep in her bed. Defendant forcibly raped her, using his hands and threats to accomplish the rape. Gina testified that defendant penetrated her twice and that she attempted to resist him throughout the encounter. At no time did she consent to have intercourse with the defendant and repeatedly tried to get him to desist and leave the house. Defendant finally left through the kitchen door and went around to the window and attempted to put the screen back in place. Once Gina determined that the defendant was a good distance from her house, she called her father.

When Mr. Lightfoot and Deputy Harrison arrived, she told them what had happened and they went around the house to look at the bedroom window. They found the grass and a piece of an old antenna mashed down under the window. They also found the screen in the window to be out of its frame.

When SBI agent Brinson came to the Lightfoot residence, he took the sheets that were on Miss Lightfoot's bed into his custody. The sheet covering the mattress had mud and dirt on

the bottom. Brinson also took the pajamas Gina was wearing on the morning of the attack. The pajama bottoms were torn along the waistband seam.

Sheriff Broughton and Brinson interrogated the defendant in the evening of the day the alleged rape took place. Defendant was informed that Gina had identified him as the rapist, had described what he was wearing at the time of the rape and that he probably left his fingerprints in several places in the Lightfoot residence. Defendant then confessed that he had raped the girl earlier that day.

A doctor testified that he examined the child and found some white secretion in the vagina but could not determine whether there was sperm present. There were red places on Gina's face and left arm.

Defendant offered evidence tending to show the following: He had received phone calls from Gina on numerous occasions. Around 7:00 a.m. on 20 August 1975, he received a call from her asking him to come down to her house because her parents were not at home. She told him not to come to the front or kitchen doors but to come to the side window. He went to the Lightfoot house that morning after having gone to Chappell's Grocery for some nabs and a soda. He entered the residence through a bedroom window after seeing Miss Lightfoot standing in her parents' bedroom dressed in pajamas. She offered to have sexual intercourse with him for $5.00. He agreed to pay her $5.00 but it was not until they were on the bed that she demanded the money immediately. When he told her that he did not have it she got mad and when she threatened to call her father, defendant left.

Another physician, who examined the prosecuting witness between 1:00 p.m. and 2:00 p.m. on the day of the alleged rape, testified that he was unable to testify that Miss Lightfoot had been raped.

There were other witnesses who testified that the defendant had a good reputation in the community and his mother testified that the defendant had received a phone call between 7:00 a.m. and 7:30 a.m. on the morning of the alleged rape, but that she did not know the identity of the caller.

The State's rebuttal evidence was the testimony of one of defendant's friends to the effect that during a lunch break on

19 August 1975, the defendant told him that he was going to Gina Lightfoot's house and try to have sexual intercourse with her and that if she was unwilling he "was going to take it." This person further testified that on the morning of 20 August 1975, he saw the defendant walking from the direction of the Lightfoot residence towards Windfall between 8:00 a.m. and 9:00 a.m. He also testified that the prosecuting witness was not a "fresh type" with the boys.

It is manifest from the foregoing summary that the evidence required that the case be submitted to the jury. Defendant's assignments of error based on the alleged insufficiency of the evidence are overruled.

Defendant's final contention is that a portion of the trial court's instructions to the jury contains an inadequate statement of the law applicable to the offense of second degree rape and that the court erred when it failed to give an instruction set out by the defendant. Defendant did not request the trial judge to give the instruction he now, on appeal, says should have been given and concedes that he can cite no authority for the proposition that it should have been given.

In pertinent part, the judge instructed the jury as follows:

"Now I charge, Members of the Jury, that for you to find the defendant guilty of second degree rape, or in that case guilty as charged, the State must prove three things beyond a reaonable doubt: (1) That the defendant had sexual intercourse with Gina Veroneka Lightfoot, and members of the Jury I instruct you that the slightest penetration is enough to constitute the sexual intercourse; (2) that the defendant used or threatened to use force sufficient to overcome any resistance that she might make; and (3) that Gina Veroneka Lightfoot did not consent and it was against her will.

\*    \*    \*

And so, Members of the Jury, first as to the charge of second degree rape, I charge you, Members of the Jury, that if you find from the evidence beyond a reasonable doubt, that on or about August 20, 1975, Wilber Lee Banks came into Gina Lightfoot's room, and got on top of her, held her down on her bed, pulled her pants down, while she was resisting him and trying to keep him off of her, and

inserted his penis into her vagina, and forcibly had sexual intercourse with Gina Lightfoot, without her consent and against her will, it would be your duty to return a verdict of guilty of second degree rape, or guilty as charged."

The foregoing constitutes a proper declaration and explanation of the law arising on the evidence. Defendant's assignments of error to the charge are overruled.

We find no prejudicial error in defendant's trial.

No error.

Judges BRITT and MARTIN concur.