STATE OF NORTH CAROLINA v. ODELL DELANO CLANTON, SR.

No. 29

(Filed 14 April 1971)

1. **Criminal Law § 87— leading questions — teenage daughters of the defendant**

   The solicitor could ask leading questions of two teenage sisters whose father was on trial for the murder of his wife, where the sisters were reluctant to disclose the numerous physical clashes and fights that had taken place between their parents.

2. **Criminal Law § 99— conduct of trial court — objection to court's angry tone of voice**

   Defendant's contention that the trial judge prejudiced the defense by his angry tone of voice in ruling on defendant's objections to leading questions, *held* not supported by the record.

3. **Criminal Law § 158— conclusiveness of case on appeal**

   The Supreme Court could not consider defendant's affidavit that was not certified as a part of the case on appeal.

4. **Homicide § 21— homicide of wife — sufficiency of evidence**

   The State's evidence, which was circumstantial, was sufficient to support a jury finding of defendant's guilt in killing his wife, where there was testimony that (1) the couple had argued and fought over the past two years; (2) the defendant and his wife were arguing on the morning of the crime; (3) later in the day the defendant, in an incoherent state, told his sister that something had happened to his

wife; (4) the wife was found dead in the kitchen of their home, her body lying in a pool of blood; (5) the defendant was the last person known to have been with his wife when she was alive; (6) defendant, when arrested, had human blood stains on his clothes and a fresh scratch on his neck.

APPEAL by defendant from *Johnston, J.,* August 26, 1970 Session, GUILFORD Superior Court.

In this criminal prosecution, Odell Delano Clanton, Sr., was indicted for the murder of his wife, Mary Florence Clanton. The offense is charged to have occurred in Greensboro on Thanksgiving Day, November 27, 1969. Upon arraignment, the State through its prosecuting officer, the solicitor, announced in open court the State would not ask for a verdict of guilty on the capital charge of murder in the first degree, but upon such lesser included offense as the evidence might warrant.

The defendant entered a plea of not guilty. At the close of the State's evidence the defendant lodged a motion to dimiss which the court overruled. The defendant did not offer evidence. The jury returned as its verdict "Guilty of manslaughter." From the judgment of imprisonment imposed, the defendant appealed.

*Robert Morgan, Attorney General, by Henry T. Rosser, Assistant Attorney General, for the State.*

*Herman L. Taylor for defendant appellant.*

HIGGINS, Justice.

The defendant contends the trial judge committed prejudicial error (1) by permitting the solicitor to elicit evidence from two teen-age daughters of the defendant and the deceased, by means of leading questions; (2) by the manner and tone of his voice in overruling defense counsel's objections to the leading questions; and (3) by overruling defendant's motion to dismiss at the close of the evidence.

[1] The exception to the solicitor's leading questions cannot be sustained. The witnesses were the teen-age daughters of the defendant who was charged with and was on trial for the killing of his wife, their mother. The record clearly discloses their reluctance to reveal in court the numerous differences, physical clashes and fights that had taken place between their father and mother during the past two years, including his threats to

kill her. Permitting these leading questions under the circumstances disclosed, was a matter within the sound discretion of the trial judge. His ruling will not be reviewed on appeal, absent a showing of abuse of discretion. *State v. Pearson*, 258 N.C. 188, 128 S.E. 2d 251; *State v. Beatty*, 226 N.C. 765, 40 S.E. 2d 357; *State v. Harris*, 222 N.C. 157, 22 S.E. 2d 229. Abuse of discretion is not disclosed.

[2, 3] The defendant contends the trial judge, by his manner and angry tone of voice in ruling on defendant's objections to leading questions, prejudiced the defendant's case before the jury. The words of the judge are in the record. His manner and tone of voice are not disclosed. Defense counsel, however, has filed in this court an affidavit in which he attempts to describe the manner in which the judge ruled on his objections. The affidavit is attached to, but not certified or agreed to, as a part of the case on appeal and cannot be considered by this court in passing on the merits of the appeal. The record does not sustain this assignment.

[4] The defendant's major challenge is to the sufficiency of the evidence to survive the motion to dismiss. The evidence is circumstantial. To survive a motion to dismiss, or for a directed verdict of not guilty, or for judgment as of nonsuit (used interchangeably in criminal prosecutions) the evidence must be sufficient to permit a legitimate inference the defendant committed every essential element of the crime charged. (In this case, manslaughter.) The rule is for the guidance of the trial judge in passing on the motion to dismiss. *State v. Stephens*, 244 N.C. 380, 93 S.E. 2d 431; *State v. Dawson*, 272 N.C. 535, 159 S.E. 2d 1; *State v. Horton*, 275 N.C. 651, 170 S.E. 2d 466. The judge must instruct the jury, however, that in order to permit a verdict of guilty, the jury must find from the evidence beyond a reasonable doubt that the defendant committed every essential element of the offense before the jury may return a verdict of guilty of that offense. In this case we may assume the trial judge gave the required instructions since the defendant did not include the charge in the case on appeal. This court, therefore, is confronted with the question whether the record discloses evidence sufficient to support a legitimate finding the defendant committed all the essential elements of manslaughter.

The State's evidence disclosed that the defendant, Odell Delano Clanton, Sr., and his wife, Mary Florence Clanton, on

and prior to November 27, 1969, lived in the City of Greensboro. They argued frequently; "they fought a lot"; the defendant on numerous occasions had assaulted his wife, once by trying to run over her with an automobile; and he had made threats to kill her. The elder daughter, Sharon, age 16, as a State's witness testified that she had seen her father and mother fight often. On the evening of November 26, her mother, a school teacher, came home from the grocery store about 8:30. A dispute began. ". . . (S)he (the mother) didn't say anything. She just went back out . . . she came home . . . about ten o'clock the next morning (November 27)." The witness and her younger sister soon thereafter went to the home of an aunt, leaving the father and mother at home quarreling.

About 3:45 on the afternoon of the 27th the defendant appeared at the home of Mrs. Haith, his sister, in the City of Winston-Salem. ". . . (H)e asked me where was my mother. . . . (A)nd he started saying that something had happened to Mary. He was very incoherent and kept speaking about my mother. . . . I don't recall word for word of anything he said to me that he had done to his wife." Mrs. Haith in Winston-Salem called a relative in Greensboro and as a result of the call, relatives and officers went to the Clanton home between 4:30 and 5:00 o'clock. The doors were locked. When the relatives and officers entered, they found the dead body of Mary Florence Clanton lying in a pool of blood on the kitchen floor. A chair and a stool were knocked over and a number of soft drink bottles (later estimated to be twenty-three in number) were scattered about the room.

The autopsy, performed by a pathologist on the body of the deceased, revealed numerous bruises about the head, chest, shoulders, arms and hands. ". . . (T)here was extensive recent hemorrhage in all the soft tissues of the scalp. . . . There were small hemorrhages in the membrane covering the brain. I did not find any evidence of fracture." In the opinion of the pathologist, death resulted from the injuries to the brain. There was a considerable amount of blood near the body and blood on one of the bottles.

Defendant was arrested immediately. He had a fresh scratch on his neck, blood on his coat, trousers, socks and shoes. Analysis of stains on the defendant's clothes showed them to be human blood. The quantity was insufficient to identify the group.

Evidence discloses that on the morning of the 27th the defendant and the deceased were in a dispute at home. The two girls left. Later on in the afternoon the defendant was in Winston-Salem mumbling to his sister that something had happened to Mary. Mary's body was found in the home, the doors of which were locked. The record does not reveal the cause of defendant's incoherence. Apparently it was not from injury. He knew and disclosed that something had happened to Mary. He was the last person known to have been with her while she was alive. At that time they were in an argument. She was found dead later in the day in the home in which they were last seen together. The body was in a pool of blood on the kitchen floor; human blood stains were on his clothes; he had a fresh scratch on his neck; and skin and human tissue were discovered under one of Mary's fingernails.

The State's evidence from near relatives was certainly not slanted in favor of the State. The evidence when viewed in the light most favorable to the State, as it must be on the motion to dismiss, was sufficient to go to the jury and to sustain its verdict. *State v. Goines,* 273 N.C. 509, 160 S.E. 2d 469; *State v. Roux,* 266 N.C. 555, 146 S.E. 2d 654; *State v. Stephens, supra.*

In the verdict and judgment we find

No error.