BEN COATES AND WIFE, YVETTE COATES, PLAINTIFFS v. NIBLOCK DEVELOPMENT
CORP., DEFENDANT

No. COA03-479

(Filed 2 December 2003)

**Warranties— express warranty—structural defects—synthetic stucco**

> The trial court properly denied defendant developer's motion for a directed verdict in plaintiff homeowners' action to recover damages for breach of an express ten-year warranty against structural defects for water damages caused by defective synthetic stucco on a home purchased by plaintiffs because (1) there was sufficient evidence of damage to load-bearing elements of the home in the testimony by the supervisor in charge of repairs to the home that there was a lot of "structural, rotted wood" damage in the wall studs, headers over the tops of windows, and sill bands; (2) in the instant case, the actual physical damage occurring to the covered load-bearing elements of the house, if left untreated, would cause the house to become unsafe or unlivable; and (3) plaintiffs were not required to stand idly by until the damage became so severe that choosing to remain in the house presented a risk.

Appeal by defendant from judgment entered 22 October 2002 by Judge John R. Jolly, Jr., in Cabarrus County Superior Court. Heard in the Court of Appeals 30 October 2003.

*DeVore, Acton & Stafford, P.A., by Fred W. DeVore, III, for plaintiffs-appellees.*

*Templeton & Raynor, P.A., by Amy F. Wise and Kenneth R. Raynor, for defendant-appellant.*

CALABRIA, Judge.

Niblock Development Corporation ("defendant") appeals from a judgment entered upon a jury verdict finding defendant breached its express warranty against structural defects on the house of Ben and Yvette Coates (collectively "plaintiffs") and awarding damages in the amount of $55,000.00. We find no error.

In 1995, plaintiffs purchased a house from defendant. As part of the consideration for the purchase of the house, defendant provided

plaintiffs with a ten year warranty. In 1999, plaintiffs had the house inspected after hearing concerns from neighbors and learning of problems associated with the exterior cladding of the house, which was constructed of a product known as Exterior Insulation Finish Systems, commonly referred to as synthetic stucco. According to the inspection report, there were high moisture readings in several areas around the house, which could cause wood rot and softening. In addition, modifications and caulking were needed to prevent water and moisture from continuing to reach behind the stucco. As a result of the report, plaintiffs undertook certain repairs, including repainting and re-caulking areas where the moisture readings were highest.

In 2000, plaintiffs again had a moisture scan analysis performed on the house and learned the moisture readings were as high and sometimes higher, despite the repairs undertaken to correct the problem. In addition, new areas where possible damage was occurring were implicated.

In 2001, plaintiffs sought a second opinion and had yet a third analysis performed by Phillip Jansen ("Jansen"). Jansen recommended plaintiffs contact a contractor to remove and replace the stucco and any portions beneath it damaged by wood rot and softening due to moisture. Plaintiffs had the work performed at a cost of approximately $92,699.00.

On 23 November 2001, plaintiffs filed suit against defendant, alleging defendant had breached the terms of the express warranty resulting in physical damage to the house and diminution in its value. At the close of plaintiffs' evidence and at the close of all the evidence, defendant moved for a directed verdict. Both motions were denied, and defendant presented no evidence at trial. The jury found defendant had breached the express warranty and awarded damages of $55,000.00. Defendant moved for a judgment notwithstanding the verdict, which the trial court also denied. Defendant appeals.

"A motion for directed verdict is to test the legal sufficiency of the evidence to take the case to the jury." *DeHart v. R/S Financial Corp.*, 78 N.C. App. 93, 98, 337 S.E.2d 94, 98 (1985). "This is a high standard for the moving party, requiring a denial of the motion if there is more than a scintilla of evidence to support the non-movant's *prima facie* case." *Ellis v. Whitaker*, 156 N.C. App. 192, 195, 576 S.E.2d 138, 140 (2003). "In passing on a motion for directed verdict, the trial court must consider the evidence in the light most favorable to the nonmovant, and conflicts in the evidence together with infer-

ences which may be drawn therefrom must be resolved in favor of the nonmovant." *Mut. Benefit Life Ins. Co. v. City of Winston-Salem*, 100 N.C. App. 300, 304, 395 S.E.2d 705, 707 (1990).

"A motion for judgment notwithstanding the verdict [("JNOV")] is simply a renewal of the movant's earlier motion for directed verdict." *DeHart*, 78 N.C. App. at 98, 337 S.E.2d at 98. "A JNOV motion pursuant to Rule 50 seeks entry of judgment in accordance with the movant's earlier motion for directed verdict, notwithstanding the contrary verdict actually returned by the jury." *Streeter v. Cotton*, 133 N.C. App. 80, 82, 514 S.E.2d 539, 541 (1999). "The test for determining the sufficiency of the evidence when ruling on a motion for judgment notwithstanding the verdict is the same as that applied when ruling on a motion for directed verdict." *DeHart*, 78 N.C. App. at 99, 337 S.E.2d at 98.

On appeal, defendant contends the trial court erred in denying his motion for directed verdict because (I) plaintiffs presented no evidence of "actual, physical damage to a load bearing element of the house," and (II) plaintiffs presented no evidence that the structural problems existing caused the house to be unsafe or unlivable.

I. Actual, Physical Damage to Covered Elements

Plaintiffs' claims are premised on the coverage provided by the express warranty accompanying the purchase of their house. The warranty provided, in pertinent part, as follows:

> Your new home is warranted for ten (10) years against structural defects. A structural defect being defined as actual physical damage to those load-bearing elements of the home that would cause it to become unsafe or otherwise unlivable. The following load-bearing portions are covered: foundation systems and footings, beams, girders, lintels, columns, walls and partitions, floor systems, and roof framing systems.

"An express warranty is contractual in nature, and its terms are therefore construed in accordance with their plain meaning[.]" *Allen v. Roberts Constr. Co.*, 138 N.C. App. 557, 570-71, 532 S.E.2d 534, 542 (2000) (citations omitted).

Defendant first asserts the evidence presented at trial concerning the damage to the house was insufficient to show that it was the type of damage for which the warranty provided coverage. Victor Searfoss, the supervisor in charge of the repairs to plaintiffs' house, testified

generally that his work consisted of repairing structural problems and damaged wood. He stated there was a "lot of structural, rotted wood damage" in the walls around the house. Specifically, he testified damaged portions included wall studs and headers over the top of windows. He further explained a header functions to "support . . . the structure above the window." Additionally, he testified the sill bands, which "sit[] on the foundation wall itself" were damaged and required repair. The sill bands are the part of the structure that functions to "support everything from the floor on up."

This testimony was more than a scintilla of evidence tending to support plaintiffs' claim that defendant breached the terms of the express warranty, particularly with respect to the degradation of the walls and floor systems. Accordingly, we reject defendant's argument.

II. Condition of House

Defendant also asserts the express warranty was not breached because the damage to the house did not cause it to become unsafe or unlivable. Defendant's argument would place plaintiffs in the untenable position of choosing between the following two options: (1) ignore the increasing damage and risk until it became so severe that their well-being was compromised by remaining in the house, or (2) undertake repairs at their own expense before the terms of the warranty could be invoked. We reject this argument outright. In the instant case, the actual, physical damage occurring to the covered load-bearing elements of the house, if left untreated, "would cause [the house] to become unsafe or unlivable." Nothing more is required by the terms of the warranty. We find meritless defendant's argument that, as a prerequisite to invoking the warranty provisions, plaintiffs were required to stand idly by until the damage became so severe that choosing to remain in the house presented risk. Indeed, as plaintiffs correctly point out, not only would such action in the instant case have allowed the damage to increase unchecked, it could also raise issues concerning the defense of failure to mitigate damages. This assignment of error is overruled, and we find the proceedings below to be without error.

No error.

Judges McGEE and HUDSON concur.