IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-103

No. COA18-536-2

Filed 6 April 2021

Dare County, Nos. 16CRS000267, -050291; 17CRS000010

STATE OF NORTH CAROLINA

v.

GREGORY JEROME WYNN, JR., Defendant.

Appeal by defendant from judgments entered on or about 15 November 2017 by Judge Jerry R. Tillett in Superior Court, Dare County. Heard in the Court of Appeals 13 February 2019 and opinion filed 5 March 2019. Remanded to this Court by order of the North Carolina Supreme Court for further consideration in light of *State v. Golder*, 374 N.C. 238, 839 S.E.2d 782 (2020).

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Matthew Tulchin, for the State.*
>
> *Anne Bleyman, for defendant-appellant.*

STROUD, Chief Judge.

¶ 1 On remand from the North Carolina Supreme Court, we review defendant's first argument on appeal in accordance with *State v. Golder*, 374 N.C. 238, 839 S.E.2d 782 (2020). We conclude there was not sufficient evidence of a firearm, and thus defendant's conviction for possession of a firearm by a felon must be vacated. We also conclude there was sufficient evidence of constructive possession of controlled

substances, and thus defendant's convictions for trafficking in heroin by possession, possession with the intent to sell or deliver a controlled substance, and attaining the status of habitual felon, remain intact. There is no error in the judgments entered for trafficking in heroin by possession, possession with the intent to sell or deliver a controlled substance, and attaining the status of habitual felon,

## I.      Background

¶ 2        We begin with the procedural and factual background of this case.

### A.      Procedural Background

¶ 3        Defendant appealed "his convictions for possession of a firearm by a felon, trafficking in heroin by possession, possession with the intent to sell or deliver cocaine, and attaining the status of habitual felon." *State v. Wynn*, 264 N.C. App. 250, 824 S.E.2d 210, slip op. *1 (COA18-536) (2019) (unpublished) ("*Wynn I*"). This Court concluded there was no error. *See Wynn I*, 264 N.C. App. 250, 824 S.E.2d 210. Defendant filed a "petition for discretionary review and motion in the alternative to remand" with the Supreme Court of North Carolina. *State v. Wynn*, 374 N.C. 427, 840 S.E.2d 781 (Mem) (2020). The Supreme Court allowed the petition for discretionary review "for the limited purpose of remanding this case to the Court of Appeals for further consideration in light of this Court's decision in *State v. Golder*, 374 N.C. 238, 839 S.E.2d 782 (2020)." *Id.* We now take up defendant's case "for the limited purpose" of considering it in light of *Golder*.

B.    Factual Background

¶ 4    The background of this case was provided by this Court in *Wynn I*:

The State's evidence tended to show that on 14 March 2016, the Dare County Sheriff's Department received a call regarding a suspicious person on Jones Circle. Deputy Sheriff Andrew Creech noticed a screen pulled out of a window of a home, and the window was open; inside the house he saw defendant. Deputy Creech tried to coax defendant outside of the house, but he would not come as he claimed people were "after him." Defendant was "very active in the house" and [Deputy Creech saw him] walking around much of the interior, heard slamming doors or drawers, and saw defendant pulling up his pants. Defendant eventually came out of the house with $2,216.00 in cash and a white substance on and in his nose. Defendant told law enforcement he had a gun when he was running to the house – he was running from the people he claimed were "after him" -- but was not sure where he dropped it.

The law enforcement officers called the man who owned the house, [Mr. Gradeless,] and he allowed them to search the house. Inside they found a black plastic bag containing smaller red plastic baggies of cocaine and heroin, digital scales, and a pistol magazine. The homeowner said none of the items belonged to him. Law enforcement then searched defendant's home and found several bullet holes, some from shots fired from inside the house and some from shots fired from the outside into the house.

Defendant was indicted for trafficking in heroin by possession, possession with the intent to sell or deliver a controlled substance, possession of a firearm by a felon, and attaining the status of habitual felon. At defendant's trial, two witnesses testified that they had purchased heroin and cocaine from defendant, always in a little red plastic baggie similar to those recovered by law enforcement. A jury found defendant guilty of all of the charges against him;

defendant pled to attaining the status of habitual felon; and the trial court entered judgments accordingly. Defendant appeals.

*Wynn I* at *2-3.

## II.    Sufficiency of the Evidence

Defendant's first argument on appeal challenged the sufficiency of the evidence against him. *See id.* at *3. In *Wynn I*, this Court dismissed defendant's argument for failure to preserve the issue before the trial court. *Id.* at *3-6. In *Golder,* while analyzing whether a motion to dismiss was adequate to preserve the issue of sufficiency of the elements of the crimes, our Supreme Court held "under Rule 10(a)(3) and our case law, defendant's simple act of moving to dismiss at the proper time preserved all issues related to the sufficiency of the evidence for appellate review." *Golder,* 374 N.C. at 246, 839 S.E.2d at 788.

A.    Application of *State v. Golder* to Motion for Directed Verdict

Defendant's attorney moved for a directed verdict at the close of the State's evidence:

> "For the defense, Your Honor, at the close of the State's case, we would move for a directed verdict in favor of the defendant. I do not care to argue that motion, however." The trial court denied the motion. Defendant did not present any evidence and at the close of all of the evidence his attorney stated, "I would just renew my motions."

*Wynn I* at *3.

¶ 7      The State contends that defendant's motions for a directed verdict do not suffice as a motion to dismiss pursuant to Rule 10(a)(3) as noted in *Golder*. *See generally id*. The State cites no law for why the two motions – a motion for directed verdict and a motion to dismiss – should be treated differently for purposes of *Golder*, but instead simply relies upon the argument that *Golder* is applicable *only* to motions to dismiss made under Rule 10(a)(3).

> A motion for directed verdict is to test the legal sufficiency of the evidence to take the case to the jury. This is a high standard for the moving party, requiring a denial of the motion if there is more than a scintilla of evidence to support the non-movant's *prima facie* case. In passing on a motion for directed verdict, the trial court must consider the evidence in the light most favorable to the nonmovant, and conflicts in the evidence together with inferences which may be drawn therefrom must be resolved in favor of the nonmovant.

*Coates v. Niblock Development Corp.*, 161 N.C. App. 515, 516–17, 588 S.E.2d 492, 493 (2003) (citations and quotation marks omitted).

¶ 8      "When granted, the common law motion for a directed verdict resulted in a judgment on the merits in either a criminal or a civil case." *Cutts v. Casey*, 278 N.C. 390, 419, 180 S.E.2d 297, 312 (1971). In *State v. Clanton*, our Supreme Court noted that a motion to dismiss and a motion for a directed verdict are "interchangabl[e]" terms that should be applied the same. *See* 278 N.C. 502, 504, 180 S.E.2d 5, 6 (1971) (noting "[t]o survive a motion to dismiss, or for a directed verdict of not guilty, or for

judgment as of nonsuit (*used interchangeably in criminal prosecutions*) the evidence must be sufficient to permit a legitimate inference the defendant committed every essential element of the crime charged" (emphasis added)).

¶ 9        Because our Supreme Court has noted a motion to dismiss and a motion for a directed verdict are "interchangabl[e]" terms in criminal cases, we conclude defendant's motion for a directed verdict should be reviewed in the same manner as a motion to dismiss. *See id.* Accordingly, "defendant's simple act of moving to dismiss at the proper time preserved all issues related to the sufficiency of the evidence for appellate review." *Golder,* 374 N.C. at 246, 839 S.E.2d at 788.

B.        Motion for Directed Verdict

¶ 10        We thus consider whether the trial court erred in denying defendant's motion for directed verdict based on insufficiency of the evidence as to "his convictions for possession of a firearm by a felon, trafficking in heroin by possession, possession with the intent to sell or deliver cocaine, and attaining the status of habitual felon." *Wynn I* at \*1.

1.        Standard of Review

> In ruling on a motion for a directed verdict or a motion to dismiss, the trial court must determine whether the State has offered substantial evidence of the defendant's guilt on every essential element of the crime charged. Substantial evidence requires that the evidence must be existing and real, not just seeming and imaginary. In considering the evidence, the State is entitled to every reasonable inference

that may be drawn therefrom. Contradictions and discrepancies in the evidence are for the jury to decide. The test for sufficiency of the evidence is the same regardless of whether the evidence is circumstantial or direct. When a motion for a directed verdict involves circumstantial evidence in a case:

> The court must decide whether a reasonable inference of the defendant's guilt may be drawn from the circumstances shown. If so the jury must then decide whether the facts establish beyond a reasonable doubt that the defendant is actually guilty.

*State v. McKenzie*, 122 N.C. App. 37, 45, 468 S.E.2d 817, 824 (1996) (citations and brackets omitted).

### 2. Possession of a Firearm by a Felon

Defendant contends that the trial court erred in denying his motion for directed verdict on the charge of possession of firearm by a felon because there was insufficient evidence of the existence of a firearm. "The State need only prove two elements to establish the crime of possession of a firearm by a felon: (1) defendant was previously convicted of a felony; and (2) thereafter possessed a firearm." *State v. Cunningham*, 188 N.C. App. 832, 836, 656 S.E.2d 697, 700 (2008) (citation, quotation marks, and brackets omitted); *see* N.C. Gen. Stat. §14-415.1 (2015).

In this case, the primary evidence of defendant's possession of a firearm was his statement to the officers that he had a gun before they arrived at the house. "Defendant told law enforcement he had a gun when he was running to the house –

he was running from the people he claimed were 'after him' – but was not sure where he dropped it." *Wynn I* at *2. The officers never found a gun, either in the house where defendant was found, in defendant's home, or in the area outside where defendant said he dropped it before he entered the house.

¶ 13        The State contends sufficient evidence tended to show defendant possessed a firearm "because the police recovered a 9mm pistol magazine from the house defendant had broken into, defendant admitted to possessing a gun, and the police found 9mm shell casings, bullet fragments, and bullet holes in defendant's home." (Original in all caps.)

¶ 14        A pistol magazine was found in the house defendant had broken into, but a magazine alone is not a firearm. *See* N.C. Gen. Stat. § 14–415.1(a) (2015) ("For the purposes of this section, a firearm is (i) any weapon, including a starter gun, which will or is designed to or may readily be converted to expel a projectile by the action of an explosive, or its frame or receiver, or (ii) any firearm muffler or firearm silencer."). A pistol magazine alone is not a weapon "which will or is designed to or may readily be converted to expel a projectile by the action of an explosive" nor is it a muffler or silencer. *Id.* As for the shell casings and bullet fragments and holes found at defendant's home, there no evidence as to when a gun may have been fired or who fired it. Thus, the evidence presents an issue of *corpus delicti. See generally State v. Parker*, 315 N.C. 222, 236, 337 S.E.2d 487, 495 (1985).

¶ 15        Where a defendant has confessed to a crime, this confession is not sufficient

evidence to support a conviction unless there is "substantial independent evidence

tending to establish" the "trustworthiness" of the confession "including facts" which

strongly corroborate the "essential facts and circumstances embraced in the

defendant's confession." *Id.*

> We adopt a rule in non-capital cases that when the State
> relies upon the defendant's confession to obtain a
> conviction, it is no longer necessary that there be
> independent proof tending to establish the *corpus delicti* of
> the crime charged if the accused's confession is supported
> by substantial independent evidence tending to establish
> its trustworthiness, including facts that tend to show the
> defendant had the opportunity to commit the crime.
>         *We wish to emphasize, however, that when
> independent proof of loss or injury is lacking, there must be
> strong corroboration of essential facts and circumstances
> embraced in the defendant's confession.* Corroboration of
> insignificant facts or those unrelated to the commission of
> the crime will not suffice. We emphasize this point because
> although we have relaxed our corroboration rule
> somewhat, we remain advertent to the reason for its
> existence, that is, to protect against convictions for crimes
> that have not in fact occurred.

*State v. Parker*, 315 N.C. 222, 236, 337 S.E.2d 487, 495 (1985) (emphasis added).

¶ 16        Here, the only evidence of a gun or defendant's possession was his statement

that he had a gun before the officers arrived at the house. The house was not his

home or residence. No gun was found in the area where defendant claimed he had

dropped it. There was no evidence of any gunshots fired. There was no "proof of loss

or injury[.]" *Id.* The magazine was found in Mr. Gradeless's house, while the shell casings, bullet fragments and holes were found at defendant's residence, but there was no evidence regarding when a gun was fired either from or into defendant's residence. This evidence does not provide "strong corroboration of essential facts and circumstances embraced in the defendant's confession." *Id.* The magazine in conjunction with the shell casings, bullet fragments and holes are "insignificant facts or those unrelated to the commission of the crime[.]" *Id.*

¶ 17 It is important to note here, that without some evidence of a firearm beyond defendant's own statement, whether recovery of a firearm, evidence that someone heard or saw gunfire, evidence that another person saw the alleged firearm, or injury to a person or property, there is simply no evidence the alleged crime even took place, and thus to convict defendant on such little evidence risks "conviction[] for [a] crime[] that ha[s] not in fact occurred." *Id.* We conclude the trial court erred in failing to dismiss the charge of possession of a firearm by a felon. As such, we must vacate defendant's conviction for possession of a firearm by a felon.

### 3. Possession of Controlled Substances

¶ 18 As for defendant's convictions for trafficking in heroin by possession and possession with the intent to sell or deliver a controlled substance, defendant

challenges only the element of possession.  *See generally* N.C. Gen. Stat. § 90-95

(2015).[1]

> The State must prove that Defendant possessed . . .
> [a controlled substance] either actually or constructively.
> Actual possession requires that a party have physical or
> personal custody of the item.  A person has constructive
> possession of an item when the item is not in his physical
> custody, but he nonetheless has the power and intent to
> control its disposition.

*State v. Wirt*, 263 N.C. App. 370, 373, 822 S.E.2d 668, 671 (2018) (citation and

quotation marks omitted).  For purposes of constructive possession,

> the State is not required to prove actual physical
> possession of the controlled substance; proof of constructive
> possession is sufficient and such possession need not be
> exclusive.  Constructive possession exists when a person,
> while not having actual possession of the controlled
> substance, has the intent and capability to maintain
> control and dominion over a controlled substance.  Where
> a controlled substance is found on premises under the
> defendant's control, this fact alone may be sufficient to
> overcome a motion to dismiss and to take the case to the
> jury.  If a defendant does not maintain control of the
> premises, however, other incriminating circumstances
> must be established for constructive possession to be
> inferred.

*State v. Neal*, 109 N.C. App. 684, 686, 428 S.E.2d 287, 289 (1993) (citations omitted).

North Carolina courts have issued an abundance of case law addressing the specific

---

[1] North Carolina General Statute § 90-95 has since been amended.  *See* N.C. Gen. Stat. § 90-95 (2020).

factual nuances of constructive possession as was noted by our Supreme Court in

*State v. Miller*, 363 N.C. 96, 99–100, 678 S.E.2d 592, 594–95 (2009):

> Our cases addressing constructive possession have tended to turn on the specific facts presented. *See, e.g., Butler*, 356 N.C. at 143–44, 147–48, 567 S.E.2d at 138–39, 141 (finding constructive possession when the defendant acted suspiciously upon alighting from a bus; hurried to a taxicab and yelled "let's go" three times; fidgeted and ducked down in the taxicab once in the back seat, then exited the taxicab at the instruction of police officers and walked back to the bus terminal without being told to do so, drawing officers away from the taxicab; and drugs were recovered from under the driver's seat of the taxicab approximately ten minutes later when the cab returned from giving another customer a ride); *Matias*, 354 N.C. at 550–52, 556 S.E.2d at 270–71 (finding constructive possession when officers, after smelling marijuana emanating from a passing automobile occupied by the defendant and three others, recovered marijuana and cocaine stuffed between the seat pad and back pad where the defendant had been seated, and an officer testified the defendant was the only occupant who could have placed the package there); *State v. Brown*, 310 N.C. 563, 569–70, 313 S.E.2d 585, 588–89 (1984) (finding sufficient other incriminating circumstances when cocaine and other drug packaging paraphernalia were found on a table beside which the defendant was standing when the officers entered the apartment, the defendant had been observed at the apartment multiple times, possessed a key to the apartment, and had over $1,700 in cash in his pockets); *State v. Baxter*, 285 N.C. 735, 736–38, 208 S.E.2d 696, 697–98 (1974) (finding constructive possession when the defendant was absent from the apartment when police arrived but a search of the bedroom that the defendant and his wife occupied yielded men's clothing and marijuana in a dresser drawer, with additional marijuana found in the pocket of a man's coat in the bedroom closet); *State v. Allen*,

> 279 N.C. 406, 408, 412, 183 S.E.2d 680, 682, 684–85 (1971)
> (finding constructive possession when, even though the
> defendant was absent from the apartment at the time of a
> search, heroin was found in the bedroom and kitchen; the
> defendant's identification and other personal papers were
> in the bedroom, public utilities for the premises were listed
> in the defendant's name; and a witness testified that the
> defendant had provided heroin to him for resale).

*Id.* *Miller* went on to explain, "These and other cases demonstrate that two factors frequently considered are the defendant's proximity to the contraband and indicia of the defendant's control over the place where the contraband is found." *Id.*

In this case, the controlled substances were not found in defendant's actual possession or in a domain exclusively controlled by him, and thus we must consider "other incriminating circumstances[,]" *Neal*, 109 N.C. App. at 686, 428 S.E.2d at 289, remaining mindful of "defendant's proximity to the contraband and indicia of the defendant's control over the place where the contraband is found." *Miller*, 363 N.C. at 100, 678 S.E.2d at 595.

Here, the local sheriff's department was called reporting a "suspicious person[.]" *Wynn I* at *2. Law enforcement "noticed a screen pulled out of a window of a home, and the window was open[.]" *Id.* "[I]nside the house [law enforcement] saw defendant[;]" though the home was not his. *Id.* "Defendant was 'very active in the house' and seen walking around much of the interior and heard slamming doors

or drawers[;]" *id.*, thus, defendant's presence was not limited to one room or particular spot; defendant moved throughout the house as if exercising dominion over the space. "Defendant eventually came out of the house with $2,216.00 in cash and a white substance on and in his nose."

> The law enforcement officers called the man who owned the house, and he allowed them to search the house. Inside they found a black plastic bag containing smaller red plastic baggies of cocaine and heroin, digital scales, and a pistol magazine. The homeowner said none of the items belonged to him.

¶ 21    The cocaine and heroin found inside the house coupled with the white powder on defendant's nose tend to show the drugs belonged to defendant, particularly in light of the fact that the controlled substances were packaged in red plastic baggies, a method used by defendant for selling drugs. The State presented sufficient evidence of possession of the controlled substances for both defendant's trafficking in heroin by possession and possession with the intent to sell or deliver a controlled substance convictions. As such, the trial court did not err in denying defendant's motion for directed verdict on his controlled substance charges.

### III.    Evidence of Other Wrongs

¶ 22    In *Wynn I*, we considered another issue on appeal under Rules 403 and 404, *see Wynn I* at *6-10, but we note the Supreme Court remanded this case for the limited purpose of considering this case under *Golder*, *see Wynn*, 374 N.C. 427, 840

S.E.2d 781, and we conclude *Golder* applies only as to defendant's first argument on appeal. As such, the Supreme Court left, and we shall too, leave intact our prior analysis, regarding defendant's second argument of evidence of other wrongs.

## IV.    Conclusion

As to defendant's conviction for possession of a firearm by a felon, we vacate. As there was evidence of constructive possession of the controlled substances, we conclude there was no error as to defendant's convictions and judgments for trafficking in heroin by possession, possession with the intent to sell or deliver a controlled substance, and attaining the status of habitual felon.

VACATED IN PART; NO ERROR IN PART.

Judges TYSON and ARROWOOD concur.